|127  301|
|e137 246|

# Tartt *et al. v.* Negus.

### *Common Law Action of Ejectment.*

1. *Decedent's estate; homestead exemption; sale does not forfeit claim.*—When the area and value of a homestead occupied by a decedent at the time of his death does not exceed the limit and value allowed by law as exempt and the homestead is not a part of a larger tract of land, a sale of said land by the widow or by the widow and minor children does not forfeit the homestead right; but such sale passes to the purchaser the life interest of the widow or the absolute fee simple title, dependent upon whether there were other lands owned by the decedent at the time of his death.

2. *Ejectment; when question of whether certain persons were children of deceased immaterial.*—In an action of ejectment for a lot which was occupied as a homestead by decedent at the time of his death, of value not exceeding one thousand dollars, where the plaintiffs based their right to recovery upon the fact of being sisters and next of kin of the deceased, and the defendant claims title under a deed from a person purporting to be the widow of the deceased and her two children, the question as to whether or not the children were the children of the deceased, is not material to the real issue, which was, whether the person professing to be the widow of the decedent was really his wife at the time of his death.

3. *Husband and wife; common law marriage recognized as valid in this State.*—The common law mode of marriage is recognized in this State, and to constitute such marriage it is only necessary that there should be a mutual consent between the parties to be husband and wife, followed by cohabitation and living together as husband and wife; and upon the establishment of such relation, there is a lawful marriage without regard as to what the parties consider the legal effect of such relation to be.

[Tartt *et al.* v. Negus.]

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WILLIAM S. ANDERSON.

This was a common law action of ejectment, brought by the appellants against the appellee, Julia D. Negus, to recover a certain house and lot in the city of Mobile. The plaintiffs are the sisters of one Gus Mescepts, deceased, who claimed title to the property sued for by inheritance, as the only heirs and next of kin of the said Gus Mescepts, deceased. The defendant pleaded the general issue.

The plaintiffs proved, and it was admitted, that they were the sisters of the said Gus Mescepts, deceased. It was further shown by the evidence that Gus Mescepts died September 21, 1898, and that at the time of his death he owned the lot sued for in this action, which said lot, together with its improvements, is worth from $600 to $650.

It was undisputed by the evidence that from about 1876 to the time Gus Mescepts died, one Polly Mescepts and her two children, Willie and Dan, lived together with Gus Mescepts on said premises, with the exception of about two years before the institution of the suit, when Willie Mescepts and his wife and children lived away from said house, but in the neighborhood. After the death of Gus Mescepts, Polly Mescepts and her children continued to reside on said premises until January 12, 1899, on which date said Polly and Dan Mescepts and Willie and his wife, executed a deed to the defendant Julia D. Negus, in which they conveyed said property, and Julia D. Negus immediately went into posesssion thereof and resided thereon at the time of the institution of the suit.

There was evidence introduced by the defendant tending to show that during the time Gus and Polly Mescepts lived together they were generally reputed to be husband and wife and were so considered by the people living in their neighborhood. Polly Mescepts as a witness testified that she was married to Gus Mescepts in 1866 or 1867, and that the marriage was performed by a person represented to her to be a minister, and that from the time of such marriage she and Gus

Mescepts lived together continuously as husband and wife; that to this marriage Willie and Dan Mescepts were born; that Gus Mescepts always acknowledged her and her children to everybody as his wife and children. There were several witnesses introduced in behalf of the defendant who testified that they had known Gus and Polly Mescepts for a number of years, and that they lived together as man and wife and were so considered by their neighbors; and that Gus Mescepts treated Polly Mescepts as his wife, and had introduced Willie and Dan Mescepts as his sons.

There was introduced in evidence a deed from Gus Mescepts purporting to convey the property owned by him which was signed by him and Polly Mescepts, his wife ,and there were many other facts testified to which tended to show that Polly Mescepts was Gus Mescepts' wife and her two sons were his children.

The plaintiffs in rebuttal introduced several witnesses whose testimony tended to show that Gus and Polly Mescepts were never legally married; that while Gus and Polly Mescepts lived together it was not as man and wife, but in an adulterous relation, and that Willie and Dan Mescepts were born to Polly before Gus Mescepts began to live with her. There were also witnesses for the plaintiffs who testified that Gus Mescepts had, on several occasions, stated to them, respectively, that he was never, in fact, married to Polly. Two of the witnesses introduced in behalf of the plaintiffs testified that they were present during the last illness of Gus Mescepts, and just before he died; that Gus Mescepts was a Catholic, and that he told the priest who ministered to him that he was not married to Polly Mescepts, and that Gus Mescepts was buried from his house and not from the church because he was living with Polly Mescepts in adultery.

On the separate examinations of three of the witnesses they were each asked the following questions: "Did Gus ever tell you that Polly was his wife?" "Did Gus ever say to you that those were his children?" "Did Gus ever tell you that he was not married to Polly Mescepts?" The defendant separately objected to each of

these questions, upon the ground that they called for a statement of the deceased to a person interested in his estate and in the result of the present suit. The court sustained each of these objections to the separate questions as propounded to each of said witnesses, and to each of these rulings the defendant separately excepted. Dan Mescepts, the younger of the two brothers (Willie and Dan), testified that he was about 25 years of age. There was no testimony in conflict with this testimony of the witness, Dan Mescepts. The suit was instituted on January 31, 1899.

In his oral charge to the jury, the court, among other things, instructed them as follows: "In this state a valid marriage may exist even without a ceremony and without a formal sanction of the church. Now, in some churches they do not recognize any other marriage as valid unless it is performed according to their ritual and their form of service. But we have nothing to do with that question. It is simply—so far as this case is concerned—you are to determine whether there was a valid marriage according to the laws of Alabama." The plaintiffs separately excepted to this portion of the court's oral charge, and also separately excepted to the court's refusal to give each of the following charges requested by them: (6.) "Although the jury may believe from the evidence that Gus and Polly lived together for many years with all the visible appearances of being husband and wife, still they must find for the plaintiffs if they do not further believe from the evidence that Gus considered her to be his lawful wife." (8.) "Although the jury may believe from the evidence that Gus Mescepts lived with Polly for many years with all of the outward appearance of their being husband and wife; still they must find for the plaintiffs, if they do not further believe from the evidence that he actually considered her to be his wife." (9.) "The jury should review, weigh and take into consideration all the evidence; and if after doing so, they do not believe that Gus Mescepts considered Polly to be his wife, while they were living together, they must find for the plaintiffs." (12.) "Although the jury may believe from the evidence that

[Tartt *et al.* v. Negus.]

Polly and Gus lived together for many years with all outward appearances of being husband and wife, still they must find for the plaintiffs if they do not further believe from the evidence that there was a mutual agreement and undertaking between them, understood and agreed to by both of them, to be husband and wife in the eyes of the law." (15.) "If the jury believe from the evidence that Willie and Dan Mescepts are not the children of Gus Mescepts, but were born to Polly before her relations with Gus commenced, they must find for the plaintiffs, although they do believe from the evidence that Gus and Polly afterwards became husband and wife." (16.) "If the jury believe from the evidence that Willie and Dan Mescepts were born to Polly before her relation with Gus ever commenced, they must find for the plaintiffs, even if they do believe from the evidence that Gus and Polly afterwards became husband and wife."

The court, at the request of the defendant, gave to the jury the following written charges, to the giving of each of which the plaintiffs separately excepted: (A.) "The court charges the jury that if they believe from the evidence that Gus and Polly lived together as man and wife for fifteen years or more, that they stated to various persons that they were man and wife, that they were generally reputed to be man and wife in the neighborhood where they lived, then the jury may presume from these facts that Gus and Polly consented to be man and wife." (9.) "The court charges the jury that if the jury believe from the evidence that Gus and Polly Mescepts were man and wife and that either Willie or Dan Mescepts was their child, they must find for the defendant." (10.) "The court charges the jury that if the jury believes from the evidence that the man Gus and the woman Polly consented to live together and be man and wife, and after such consent they did live together as man and wife, held themselves out to the world as man and wife, stated to various persons that they were man and wife, and conducted themselves as man and wife, and that they signed a deed as man and wife, that Polly Mescepts bore children who called Gus Mescepts

"pa" or "papa" and whom Gus acknowledged as his children, then they were legally married, and the children were the legitimate children of Gus Mescepts, and the jury must find for defendant."

There were verdict and judgment for the defendant. The plaintiffs appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

SHELTON SIMS and BESTOR & GRAY, for appellants. The rulings of the court upon the evidence, to which exceptions were reserved by the appellants were erroneous. *Powell v. Edwards,* 97 Ala. 649.

As the homestead had not been allotted to the widow under any of the provisions of the law provided therefor, the sale to Mrs. Negus amounted to an abandonment of the widow's homestead rights.—*Banks v. Spears,* 97 Ala. 560; *Barber v. Williams,* 74 Ala. 331.

SULLIVAN & STALLWORTH, *contra,* cited *Jackson v. Wilson,* 117 Ala. 432; *Farley v. Farley,* 94 Ala. 501; *Moore v. Heineke,* 119 Ala. 627; 14 Amer. & Eng. Encyc. of Law, pp. 527-8.

SHARPE, J.—Under section 2069 of the Code the homestead exempted to the widow or widow and minor children, if any, of a decedent is made to enure to the benefit of the widow or widow and minor children of the decedent during the life of the widow or minority of the children whichever might last terminate, and to vest in them absolutely if the estate is ascertained to be insolvent. This provision is general in terms, but is qualified by section 2071 of the Code, which provides that "when the homestead set apart to the widow and minor children, or either, constitutes all the real estate owned by the decedent at the time of his death the title to such homestead vests absolutely in them, whether there be administration on the estate of the decedent or not." As to whether the decedent Mescepts through whom the plaintiff claims owned at his death other real estate be-

[Tartt *et al.* v. Negus.]

sides the lot in controversy, the proof is meagre and the inferences from it not clear.

Since the passage of the act of February 28th, 1889, now embodied in part in section 2101 of the Code, occupancy of the homestead is not necessary to the preservation of the homestead right. The forfeiture dealt with in *Banks v. Spears,* 97 Ala. 560, occurred before the passage of that act, and the decision was placed expressly upon that consideration. There with reference to whether a sale made after that act was adopted would forfeit the homestead right, the court said that "on principle it would seem that it should not." In *Garland v. Bostick,* 118 Ala. 209, it was held that under the statute removal from and renting out of the exempted premises did not work a forfeiture. If the widow may without occupation lease to others, no good reason appears why her entire right may not be disposed of by a sale; and we think the act was intended to allow such disposition of the right as might best suit the interest of those for whose benefit the exemption was created.

The statute authorizes proceedings in the probate court for setting apart the homestead, and they may be resorted to with advantage for the purpose of establishing the exempt character of the particular property by record evidence. When, however, the homestead does not exceed in value or area the legal exemption, and there is no selection or setting apart from other lands to be made, as is the case where the decedent owns no other real estate, or where the homestead is of defined limits and is disconnected from other lands, such legal proceedings are not essential to vest or perfect the right of exemption, but it attaches by the force and terms of the statute itself.—*Pollak v. McNeil,* 100 Ala. 203; *Jackson v. Wilson,* 117 Ala. 432; *Garland v. Bostick, supra.*

In the present case, the complaint defines the boundaries of the lot sued for and the proof shows that the lot was occupied as a homestead by Gus Mescepts at his death, and that its value was $600 or $650. Therefore, the heirship of Willie and Dan Mescepts was not involved in the real issue, which was whether Polly Mes-

[Tartt *et al.* v. Negus.]

cepts was the widow of the decedent through whom the plaintiffs claim. Charges 15 and 16 requested by the plaintiffs assume that the defendant's title depended on such heirship and were, therefore, properly refused.

If Willie and Dan Mescepts were not heirs of the decedent, they of course had no interest present or future in the lot. If they were the decedent's legitimate sons, not being minors, they took no homestead right, but that right passed alone to Polly Mescepts if she was the widow, and in that case the deed in which she joined was sufficient to pass to defendant the fee which the statute vested in her, if there was no other real estate left, or her life interest if there was other land. In either case the plaintiffs would have no present right to dispossess the widow's alienee.

The common law mode of marriage is recognized as valid in this State, and to constitute such marriage it is only necessary that there shall exist a mutual consent or agreement between the parties to be husband and wife, followed by cohabitation and living together as husband and wife. If such was the status of Gus and Polly Mescepts, the law established the relation of marriage without regard to what the parties considered the legal effect to be. It was, therefore, not essential to the validity of the marriage that Gus Mescepts should have considered Polly to be his wife, as is in effect asserted by plaintiffs' requested charges 6, 8 and 9; nor was it necessary to the marriage that the agreement should have been in terms "to be husband and wife in the eyes of the law," as stated in charge 12.

There was evidence of the facts hypothesized in charge "A" given for the defendant, and while such facts do not as a legal conclusion show an agreement of marriage, they were evidence from which the jury might have inferred the existence of such agreement.

Under the principles stated there was no error prejudicial to the plaintiffs in the remaining charges requested for the defendant, or in rulings made on the competency of witnesses to testify on the subject of parentage. The allusion made in the oral charge to the rituals of some churches concerning marriages was abstract,

[Johnson *et al.* v. Kyser, Exec.]

but it was not calculated to injure the plaintiffs and there is nothing to show that it had such effect.

Judgment affirmed.