# Medley, *et al. v.* Shipes, *et al.*

## *Ejectment.*

### (Decided April 4, 1912. 58 South. 304.)

1. *Executors and Administrators; Final Settlement; Decree; Effect.*—Upon final settlement a decree reciting that the administrator, having expended all the assets and money that came into his hands, is therefore discharged from further liability, was a complete discharge of the administrator, and the probate court had no further jurisdiction over the estate.

2. *Same; Setting Aside.*—The probate court had no authority or power to set aside a decree or to re-open the administration for any purpose after decree discharging the administrator, when the term at which such decree of final settlement was rendered had elapsed.

3. *Judgment; Collateral Attack; Presumption.*—Where it affirmatively appeared that an attempted decree of insolvency of an estate was rendered several years after the court had lost jurisdiction of the estate by a final decree discharging the administrator, no presumption could arise that such attempted decree was valid, on collateral attack.

4. *Homestead; Ascertainment; Insolvency.*—The failure of an administrator to ascertain the insolvency of an estate is not a bar to the right of the widow of the intestate to proceed independently and have such insolvency ascertained judicially, by bill in chancery in her own name.

5. *Same.*—Where the widow, nor the administrator had a judicial ascertainment of the insolvency of the estate, the fee to the homestead did not vest in the widow of intestate, but she took only a life estate with reversion to the intestate's heirs at her death.

APPEAL from Dale Circuit Court.

Heard before Hon. A. H. ALSTON.

[Medley, et al. v. Shipes, et al.]

Ejectment by W. J. Medley and others against Nelson Shipes and others. Judgment for defendants and plaintiffs appeal. Reversed and remanded.

J. E. Z. Riley, for appellant. The decree of the court discharging the administrator was .final and concluded the probate court's jurisdiction. A court of equity might have acquired jurisdiction to declare the estate insolvent and vest the fee in the homestead in the widow at her instance, but the probate court could not after the lapse of the term at which the decree was granted, take jurisdiction to declare it insolvent. Hence, under the facts in this case the widow was vested only with a life interest with reversion to the intestate's heirs on her death in the homestead.—Sec. 291, Code 1896; *Hickey v. Stallworth,* 143 Ala. 535; *Sands v. Hickey,* 135 Ala. 322; *Ligon v. Ligon,* 84 Ala. 556; *Tarver v. Tankersly,* 51 Ala. 309.

H. L. Martin, for appellee. It takes a decree to discharge an administrator, and the decree here set up does not accomplish the purpose.—*Hickey v Stallworth,* 143 Ala. 538; 84 Ala. 556. The proceedings to declare the estate insolvent were regular.—117 Ala. 463. Hence, they cannot be collaterally assailed.—45 Ala. 496; 47 Ala. 728; 89 Ala. 261. The widow took the homestead after the decree of insolvency, in fee.— 150 Ala. 209; 124 Ala. 298. This ascertainment of insolvency was conclusive upon the heirs.—89 Ala. 261.

SOMERVILLE, J.—The action is statutory ejectment. Plaintiffs (appellants here) claim title as heirs of their father, Eldridge Medley, who died intestate on November 22, 1884. Defendants claim as purchasers from Jane Medley, deceased, who was the surviving widow of said intestate.

The only question presented on the trial was whether Jane Medley owned a life estate or a fee-simple estate in the land sued for.

The history of intestate's estate, as shown by the bill of exceptions, is as follows:

J. E. French, the original administrator, having resigned the trust, made a final settlement of his administration on June 13, 1887, and was discharged from further liability. He had collected assets to the amount of $171, and was allowed credits to the amount of $176. On August 30, 1888, J. J. Watson filed his petition to be appointed administrator de bonis non, representing that the unadministered assets, including exemptions, were of the estimated value of $700. On November 7, 1888, Jane Medley, the widow, filed her petition, showing that no exemptions, real or personal, had been set apart to her, and praying that commissioners be appointed for that purpose. Commissioners were forthwith appointed, and on December 3, 1888, they reported that she was entitled to a homestead exemption in 160 acres of land—the same here sued for, which they appraised at $800. This report was confirmed on the same day, and it was "ordered, adjudged, and decreed that the property so set off and set aside to the widow  *  *  * be exempt unto her, and that she have full power, control, and ownership of same as allowed by law." On December 4, 1888, letters of administration de bonis non were granted to J. J. Watson. Said Watson then regularly proceeded to sell for division among the heirs (January 5, 1891) a 40-acre tract of land, all that belonged to the estate outside of the homestead exemption; himself becoming the purchaser for $40, and the sale being duly confirmed. On May 5, 1891, said Watson filed in court a "report of his acts and doings as such administrator from December 4,

[Medley, et al. v. Shipes, et al.]

1888, to May 5, 1891." This report showed that the fund received from the land sale had been exactly consumed by taxes and the fees, costs, and expenses of the sale, leaving no assets at all in the hands of the administrator, and recited that the amount of claim against the estate still unpaid was "$——."

On June 15, 1891, this report was heard, and the account and vouchers were passed and allowed by the court as a final settlement of the administration, and the decree recites that, "it further appearing that said administrator having expended all the assets and money that came into his hands, he is therefore discharged from further liabilities.' On November 16 1900, Jane Medley, the widow, conveyed the homestead tract by warranty deed to Martha E. Watson and Lillie A. Watson; the latter being now Mrs. Nelson Shipes. Mrs. Medley took possession of the land, and occupied it as her own from the date of its allotment to her until her death some time prior to the filing of this suit. On April 13, 1901, J. J. Watson, describing himself as "administrator de bonis non of the estate of Eldridge Medley, deceased," filed a report to the probate court "that the property of said estate, according to the best of his knowledge and belief, is insolvent." He reported that there were no assets belonging to the estate, and submitted a schedule of debts aggregating about $475, and prayed that the estate be declared insolvent. A day was set for hearing the petition, and the estate was duly declared insolvent by decree of the court.

Unquestionably, the probate decree of June 15, 1891. was a decree rendered on final settlement of the administration of the estate, and operated as a final and complete discharge of the administrator as such. Thereafter he was functus officio, and the decree was a res

judicata finally and conclusively establishing those facts.

And, after the lapse of the term at which the decree was rendered, the probate court had no power to set aside the decree or to reopen the administration for any purpose. Indeed, the jurisdiction of the court with respect to the estate was fully determined and extinguished by that decree so long as it remains unreversed or unannulled.—18 Cyc. 1188, 1189, 1192, and cases cited; *Watts' Adm'r v. Watts,* 37 Ala. 543; *Hicky v. Stallworth,* 143 Ala. 535, 39 South. 267, 111 Am. St. Rep. 575, 5 Ann. Cas. 496; *Horn v. Bryan,* 44 Ala. 88.

In the face of this decree, there is no room for a resort to presumptions in support of the attempted decree of insolvency, for no presumptions can arise where the record affirmatively shows a complete extinction of jurisdiction.—*Hickey v. Stallworth, supra.* The petition for a decree of insolvency was filed about 17 years after the intestate's death, and at least 15 years after the first grant of administration, and shows on its face that the alleged debts were overdue by periods ranging from 11 to 19 years. It is not necessary, however, to consider whether under these peculiar circumstances the petition might have conferred any jurisdiction on the court to render the decree of insolvency.

We, of course, do not mean to hold that the failure of the administrator to duly ascertain the insolvency of the estate was a bar to the widow's right to proceed independently to that end; for it has already been settled that she may do so by a bill in chancery in her own name, where the administrator has not discharged the initial duty resting upon him in the premises.—*O'Daniel v. Gaynor,* 150 Ala. 205, 43 South. 205.

It results that, there having been no judicial ascertainment of the insolvency of Eldridge Medley's estate,

[Conway v. Clark, et al.]

the widow took only a life estate in the land sued for and this life estate was never enlarged into a fee.— *O'Daniel v. Gaynor, supra.* And, further, that, upon the death of the widow, the reversion passed to intestate's heirs at law, who are the plaintiffs in ejectment. In this view of the case, defendants' title as grantees of the widow, Jane Medley, was determined by her death, and plaintiffs are entitled to recover the land by virtue of their superior title.

The judgment will be reversed and the cause remanded.

Reversed and remanded. All the Justices concur, except McClelland and Mayfield, JJ., not sitting.