MODERN WOODMEN OF AMERICA v. GHROMLEY.

No. 3103.    Opinion Filed February 28, 1914.

(139 Pac. 306.)

1.  **DEATH**—Presumption—Evidence of Absence. G., whose age at the time is not shown, but who was a mere youth, left his home in Kentucky, going to Texas. At the time of his departure he left a brother four years his junior, an inmate of an orphans' home. Upon reaching eighteen years of age, G. returned to his former home in Kentucky, where he spent three days trying to get word of his brother, but failed. It is not shown that the brothers had ever corresponded with each other, or that the younger knew of the elder's whereabouts. The year previous to the brother's return, the yellow fever had visited the locality of the orphans' home, causing a number of deaths. It was not proven for what length of time the younger brother remained in the orphans' home, or whether he was an inmate thereof on the visit of the pestilence, nor did it appear of whom inquiry was made, or the extent thereof. **Held,** the facts proved were insufficient to raise the presumption of death, arising from an absence from home, unheard from, for a period of seven years.

2.  **SAME**—Essential Basis. In order that the presumption that a person once shown to have been alive continues to live may be overcome by the presumption of death, arising from seven years' unexplained absence from home or place of residence, there must be a lack of information concerning the absentee on the part of those likely to hear from him, after diligent inquiry.

3.  **SAME.** The inquiry should extend to all those places where information is likely to be obtained, and to all those persons who in the ordinary course of events would be likely to receive tidings if the party were alive, whether members of his family or not; and, in general, the inquiry should exhaust all patent sources of information, and all others which the circumstances of the case suggest.

4. **SAME—Presumption—Nature and Extent.** The presumption of death is one that generally is applied only to those who were absentees from their home; but does not authorize such absent person or persons to presume, therefore, that any one of those remaining at the place which he or they have left has died.

5. **SAME.** With even greater force should the rule last announced be confined in the case of those of tender years, such as the separation of two brothers during their boyhood days.

6. **DESCENT AND DISTRIBUTION—Presumption of Heirship.** It is a presumption of law that a person dying intestate has left heirs capable of succeeding to his estate.

(Syllabus by Sharp, C.)

*Error from District Court, Bryan County;*
*Summers Hardy, Judge.*

Action by Margaret Ghromley, administratrix of the estate of Christopher F. Green, deceased, against the Modern Woodmen of America. Judgment for plaintiff, and defendant brings error. Reversed.

*Truman Plantz, Geo. L. Bowman,* and *Geo. G. Perrin,* for plaintiff in error.

*Utterback, Hayes & MacDonald,* for defendant in error.

Opinion by SHARP, C. The benefit certificate, on which plaintiff's action was brought, was issued by defendant to Christopher F. Green, March 17, 1908, and was made payable, in case of his death while a beneficial member of said society in good standing, to his beneficiary or beneficiaries, to wit, his legal heirs. The assured died November 23, 1909, while in good standing in said society. Neither the plaintiff, Margaret Ghromley, nor her sisters, Louisa Halley and Mary Elizabeth Halley, were related to the assured other than it was claimed they were each members of the family of said Christopher F. Green, and had lived with him as members of his family for many years, and had been during said time, and were at the time of his death, each and all dependent upon him for a livelihood and support.

The by-laws of defendant society, among other provisions, contained the following:

"Benefit certificates shall be made payable only to the wife, surviving children or some other person or persons specifically named in said benefit certificate as beneficiary, who are related to the member as heir, blood relative, or person dependent upon him, or member of his family, whom the applicant shall designate in his application."

And the by-laws further specifically provided that no payment should be made upon any benefit certificate to any person who did not bear to the assured, at the time of his death, the relationship, either of wife, surviving child, heir, blood relative, or person dependent upon, or member of, the family of the member. Thus it will be seen that while persons dependent upon a member of the society, or who were members of his family, were eligible as beneficiaries, the by-law named further provided that they must be specifically mentioned in the certificate as such beneficiaries. The controlling statute at the time governing beneficiary associations in this state (section 3889, Comp. Laws 1909) provided that payment of death benefits should be to the families, heirs, blood relatives, affianced husband or wife of, or to persons dependent upon, the member.

Plaintiff's action was predicated upon the theory that at the time of the death of Christopher F. Green he had no legal heirs, and that plaintiff and her two sisters, being persons dependent upon, and members of, the assured's family, were entitled to the proceeds of the beneficiary certificate, in pursuance of the by-law above quoted.

The three principal grounds upon which a reversal of the judgment below is urged, are: (1) That the administratrix was not entitled to sue; (2) that there was no sufficient evidence of the death of Christopher F. Green's brother; (3) that Margaret Ghromley and her sisters were not, in any event, legal beneficiaries under the beneficiary certificate. Our conclusions render unnecessary a determination of the first proposition, and the remaining questions will be considered together.

The application for membership and benefits in the defendant society, signed by the assured on February 20, 1908, as already observed, named as the beneficiaries the assured's legal heirs. In answer to numerous questions contained in the application, the

assured stated that he had a living brother, age 39 years, whose then condition of health was good. It was not shown whether he had any living uncles or aunts, or more distant kindred, and the only proof offered as to the death of the brother was the testimony of Margaret Ghromley, concerning statements made to her by the deceased during his lifetime, which testimony is both meager and unsatisfactory. From it we gather that when Christopher F. Green was about 21 years of age he came from somewhere in the state of Texas to the home of the plaintiff, her sisters, and then living brother, at the time residing in said state, and thereafter continued to make his home with them, first in Texas, and afterwards in what is now Oklahoma, until the day of his death 24 years thereafter; that Green had told her that when he left his home in Kentucky he left a younger brother in an orphans' home; that he went off and stayed until he was eighteen, when he returned and spent about three days trying to get word from his brother, but failed; that he found out the yellow fever had visited that locality the year before, and he guessed his brother had died, as many other persons had. Treating this testimony as competent, and though contradicted by Green's application, stating that his only brother was living and in good health, was it sufficient to raise the presumption of death arising from an absence of seven years? According to the signed application, the assured was 43 years of age at the time of the issuance of the beneficiary certificate; his brother four years younger. There is no evidence as to Green's age when he left home and went to Texas, but only that he went off and stayed until he was eighteen, when he returned. It is not shown that during his absence he ever wrote to or received letters from his younger brother, or that any form of communication, either between the brothers or others concerning them, passed during said absence. It does not appear that upon his return he made any inquiry as to whether his brother had left the orphans' home, and, if so, when, and to what place he had gone, though it may fairly be inferred that some such information was obtainable, for the testimony is that the yellow fever had visited that locality only the year before. In fact the extent of his inquiry does not appear to have been

made the subject of inquiry further than stated. If living at the time, the younger brother would have been fourteen years of age. Had it been shown that he continued to be an inmate of the orphans' home, and was such an inmate on the occasion of the pestilence named, the presumption of death would be greatly strengthened.

It is a rule of common law that a person shown not to be heard of for seven years by those, if any, who, if he had been living, would naturally have heard of him is presumed to be dead, unless the circumstances of the case are such as to account for his not being heard of, without assuming his death. Jones on Evidence, sec. 61.

The origin and growth of this rule of presumption is learnedly treated in Thayer's Preliminary Treatise on Evidence at Common Law, pages 319 to 324, where in part it is said:

"It is a rule of presumption that, in the absence of evidence to the contrary, a person shall be taken to be dead when he has been absent seven years and not heard from. This is a modern rule. It is not at all modern to infer death from a long absence; the recent thing is the fixing of this time of seven years, and putting it into a rule. The faint beginning of it, as a common-law rule, of general application in all questions of life and death, is found, so far as our recorded cases show, in *Doe, d. George v. Jesson* (6 East, 80) in January, 1805. Long before this, in 1604, the Bigamy Act of James I had exempted from the scope of its provisions, and so from the guilt and punishment of a felon (1) those who had married a second time when the first spouse had been beyond the seas for seven years, and (2) those whose spouse had been absent for seven years, although not beyond the seas, * * * 'the one of them not knowing the other to be living within that time.'"

The extension of the rule, as well as its limitations, is interestingly treated in the subsequent pages of the above authority, as well as in Lawson, Law of Presumptive Evidence, pp. 246-286, and Chamberlayne's Modern Law of Evidence, pp. 1090-1118. In this country the rule has generally been applied to those who are absentees from their home.

As was said in *Hyde Park v. Canton*, 130 Mass. 505:

"If a man leaves his home and goes into parts unknown, and remains unheard from for the space of seven years, the law

authorizes, to those that remain, the presumption of fact that he is dead; but it does not authorize him to presume therefore that any one of those remaining in the place which he left has died."

In Chamberlayne's Modern Law of Evidence, sec. 1096, we find the following statement of the rule:

"The presumption of death being based upon an inference of fact that the persons will naturally communicate with their homes, it may be premised that in certain contingencies, where these facts are not shown to exist, the rule of law does not come into operation; for example, it is of no special significance that one who has left home, and is of parts unknown, has failed to hear from or about those whom he has left there."

In other words, under such circumstances the expiration of seven years without tidings gives rise to no presumption of law that the person at home is dead.

In the case at bar, an orphan boy left his home in Kentucky, leaving a brother four years younger an inmate of an orphans' home. The record is silent as to whether the latter knew of the whereabouts of the older brother, or ever wrote to, or attempted to communicate with him. Defendant in error, upon whom rests the burden of establishing that Christopher F. Green died leaving no heirs at law, must recover (if she can do so in any event) upon proof of a state of facts from which the law will fix a presumption of death.

Ordinarily, where it is sought to fix the presumption of death upon one who is absent from home, there must be proof of inquiry made of the persons and at the places where news of him, if living, would most probably be had. 2 Greenleaf on Evidence (16th Ed.) sec. 278; Chamberlayne, Modern Law of Evidence, secs. 1100, 1101; 2 Wharton on Evidence, sec. 1274; *Posey v. Hanson,* 10 App. D. C. 496; *Wentworth v. Wentworth,* 71 Me. 72; *Flynn v. Coffey,* 12 Allen (Mass.) 133; *Shriver v. State,* 65 Md. 278, 287, 4 Atl. 679. In *Wentworth v. Wentworth, supra,* it is noted that it must appear that the absent one had not been heard of by those persons who would naturally have heard from him during the time that he had been living. But it was ob-

served that the rule did not confine the intelligence to any particular class of persons.  It may be to persons in or out of the family.

2 Greenleaf on Evidence (16th Ed.) sec. 278f, after stating the circumstances material to the issue, such as age, situation of the party against whom the presumption is directed, his habits, employment, state of health, physical constitution, as well as the place or climate of the country whither he went, facilities for communication, habit of correspondence, or other circumstances tending to aid the jury in determining the fact of life or death, says:

"There must also be evidence of diligent inquiry at the place of the person's last residence in this country, and among his relatives, and any others who would probably have heard of him, if living."

Sustaining the foregoing text are the following cases: *Bailey v. Bailey*, 36 Mich. 181; *State v. Teulon*, 41 Tex. 249; *In re Smith's Estate*, 77 Misc. Rep. 76, 136 N. Y. Supp. 825; *City of Litchfield v. Keagy*, 78 Ill. App. 398; *Sommerville v. Aetna Life Ins. Co.*, 21 Ont. L. Rep. 276, 16 Ont. W. R. 301; Lawson on the Law of Presumptive Evidence, sec. 264 *et seq.*

In *Hitz v. Ahlgren*, 170 Ill. 60, 48 N. E. 1068, it was announced by Mr. Justice Phillips that, in order to enforce the presumption of the death of a person after an absence of seven years, there must be evidence of diligent inquiry at the person's last place of residence and among his relatives, and any others who would probably have heard from him, if living.  In *Modern Woodmen of America v. Gerdom et al.*, 72 Kan. 391, 82 Pac. 1100, 2 L. R. A. (N. S.) 809, many authorities are gathered in a footnote.  In the opinion it was held that the inquiry should extend to all those places where information is likely to be obtained, and to all those persons who, in the ordinary course of events, would be likely to receive tidings if the party were living, whether members of his family or not; and, in general, the inquiry should exhaust all competent sources of information, and all others which the circumstances of the case suggest.  In *Renard et al. v. Bennett et al.*, 76 Kan. 848, 93 Pac. 261, 14 Ann. Cas.

240, the same court held that the inference of death, to be de-
rived from the unexplained absence of a person from his home
for a period of seven years, is, at best, only a presumption, and
it cannot arise unless the absence remains unexplained after dili-
gent inquiry is made of the persons, and at the places, where
tidings of the person, if living, would most probably be.

In Mississippi a statute created a presumption of death of
any person from seven years' absence without being heard of,
and it was held in *Manley v. Pattison,* 73 Miss. 417, 19 South.
236, 55 Am. St. Rep. 543, that the words "any person" referred
only to persons having volition and the right of free locomotion,
and did not create the presumption of death of children, incapa-
ble, by reason of their tender years, of absenting themselves
from the state, or of concealing themselves within it.   While
the case is perhaps not directly in point, it tends to indicate the
distinction that should exist, in the case of the absence of those
of tender years, from the general rule applicable to adults.

In *Re Miller's Estate* (Sur.) 9 N. Y. Supp. 639, a woman
eighteen years of age, illiterate, with vicious propensities, and
abandoned by her parents when quite young, escaped from an
orphan asylum in which she was confined, and it was held that
no presumption of death arose from the fact that she had failed
to answer advertisements inserted in various newspapers, and
that for more than seven years since her escape all trace of her
whereabouts had been lost.   It was said that the presumption of
death did not arise where it was improbable there would have
been any communication with home.

.   If the orphans' home, or the locality in which it was sit-
uated, continued to be the asylum of the assured's brother, and
if in fact he was not there on the occasion of the assured's visit,
it is not shown, neither was an attempt made to prove, that he
had been absent therefrom for the period of seven years; hence
there is an absence of facts necessary to give rise to the pre-
sumption of death.

Not only was the proof insufficient to establish the presump-
tion of death of the assured's brother, but it failed to show that
there were no other living heirs at law.   It has been said that it

is to be presumed that a person, proved to be dead, left heirs. Lawson, Law of Presumptive Evidence, pp. 249, 250; *Harvey v. Thornton,* 14 Ill. 217. Section 46 of the by-laws of the defendant society provided that if the death of the beneficiary of any member should occur prior to the death of the member, or in event of the disqualification of the beneficiary named, if such member should fail to have another beneficiary named, as provided in another section of the by-laws, then the amount to be paid under the benefit certificate should be paid to the surviving beneficiaries, if any there were. Or if no beneficiary survived, then to the widow; if no widow, to the children; if no children, to the mother; if no mother, to the father; if no father, to the brothers and sisters; if no brothers and sisters or child of any deceased brother or sister, then to the next of kin, who would be the distributees of the personal estate of the member upon the death of the intestate, according to the laws of the state where the said member resided at the time of his death. So that in no event is provision made for the plaintiff, or either of her sisters, even though of the designated class, not having originally or subsequently been named as beneficiaries, according to the by-laws of the society. Counsel for defendant in error admit that claimants do not come within any of the classes named in the foregoing by-law, and their insistence is that they can recover in virtue of the fact of the absence of any of the persons above designated. Even though the position be correct (a question not necessary to be decided) plaintiff, upon whom rested the burden of proof upon this issue, failed to prove that there were no living heirs, hence for that reason alone she is not entitled to recover. The first duty imposed upon those intrusted with the management of the affairs of fraternal benefit societies is to sacredly guard its funds that the benevolent purposes of the organization may be discharged. In section 3 of the Constitution of the plaintiff in error, of 1908, it is said that the purposes of said organization shall be the affording of substantial benefits to, and promoting of fraternal relations among, its members during life, and the furnishing of financial aid and indemnity to the beneficiaries of beneficial members after death. Had the as-

JANUARY TERM, 1914.—Vol. XLI.  541

sured desired, and the facts warranted, claimant and her sisters could have been named either as original or substitute beneficiaries, but he saw fit not to do so, but instead to name his legal heirs as beneficiaries.

From what has been said, it is obvious that the learned trial judge erred in rendering judgment for the plaintiff. The judgment of the trial court should therefore be reversed.

By the Court: It is so ordered.