(92 South. 13)

**KYSER et al. v. McGLINN.    (1 Div. 218.)**

(Supreme Court of Alabama.    Dec. 22, 1921.)

1. **Death** &—2(2).—**Presumption of death raised from absence.**

Where a man's family have had no intelligence concerning him since 1903, the presumption will be indulged that he has been dead since 1910.

2. **Life estates** &—8—**Remainders** &—17(3)—**Limitations or adverse possession do not run until termination of life estate.**

In the absence of any special equity putting the onus of action on him, neither the statute of 10 years nor the prescriptive period of 20 years runs against a remainderman until the determination of the life estate.

3. **Homestead** &—143—**Estate for life or during minority held to vest in widow and children, and title to vest subject thereto in the heirs.**

Under Code 1876, § 2821, in force in 1880, where a decedent's estate was not declared insolvent, only an estate for the life of the widow or the minority of the children, whichever terminated last, vested in them, and subject thereto the title and right of possession vested in the heirs upon the death of the decedent intestate.

4. **Homestead** &—149—**Not forfeited by widow's removal so long as she resided in the state.**

Under Act Feb. 28, 1889 (Laws 1889, p. 113), a widow's removal from the homestead did not operate as a forfeiture to the heirs or creditors so long as the widow and minor children resided in the state.

5. **Adverse possession** &—62(3) — **Homestead** &—143—**Limitations held not to run against heir until death of widow.**

Under Code 1876, § 2821, and Act Feb. 28, 1889 (Laws 1889, p. 113), a minor child of a decedent and those claiming under him had no right of possession as against the widow or her alienee until the death of the widow, and limitations did not run until that time.

Appeal from Circuit Court, Monroe County; John D. Leigh, Judge.

Bill by Patrick H. McGlinn against J. K. Kyser and others to sell land for division. From a decree granting the relief prayed, respondents appeal. Affirmed.

The facts stated in the bill are as follows:

That complainant owns an undivided one-third interest in certain lands described in the bill, and that the respondents Kyser and Waters own an undivided two-thirds interest in a described portion of the land, and that Phillip Lee owns a two-thirds interest in certain other portions of the land. That the land is incapable of division without a sale. The answer sets up that the respondents own in severalty the several tracts of land described in the bill, and denies that complainant has any interest in said land. And it is averred that on the 8th day of June, 1897, George McDonald and his wife, Gertrude McDonald, sold and conveyed all of the land described in the bill of complaint to one G. R. Farnham by deed which purported to convey the entire title thereto. A true and correct copy of said deed, as recorded in Deed Book 49, at page 537, probate records of Monroe county, Ala., marked "Exhibit A," is hereto attached. That said Farnham, personally or by and through tenants, went into possession of said described lands under said deed and held and claimed the same as his own openly, notoriously, continuously, exclusively, and adversely until, to wit, the 13th day of December, 1904, when he sold and conveyed said land to W. H. Waters by deed which purported to convey the entire title. A true and correct copy of said deed, as recorded in Deed Book 75, at page 452, probate records of said county, marked "Exhibit B" is hereto attached. That the said W. H. Waters personally or by and through tenants went into possession of the said described lands under said deed and held and claimed the same as his own openly, notoriously, continuously, exclusively, and adversely until, to wit, the 27th day of October, 1905, when he sold and conveyed the southeast quarter of the northeast quarter of section 10, and five acres in the northwest ¼ of northwest ¼ of section 11, in township 7 north, range 9 east, to P. W. Waters by deed which purported to convey the entire title to said portion of said land. A true and correct copy of said deed as recorded in Deed Book 59 at

---

&—For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

page 69, probate records of said county, marked "Exhibit C," is hereto attached. That the said P. W. Waters, who is one of the respondents in this case, went into possession of said land under said deed and has held and claimed the same as his own openly, notoriously, continuously, exclusively, and adversely until this suit was filed, and is still so claiming and holding the same. That he and those under whom he claims title have been in the open, notorious, continuous, exclusive, and adverse possession of said land for the past 25 years.

That on, to wit, the 13th day of December, 1902, the said W. H. Waters and wife, M. J. Waters, sold and conveyed the southwest quarter of the northeast quarter of section 10, township 7, range 9, to Monk Lee by deed which purported to convey the entire title. A copy of said deed as recorded in Deed Book 58, at page 379, probate records of said county, marked "Exhibit D," is hereto attached. That the said Monk Lee went into possession of said land under said deed and held and claimed the same as his own openly, notoriously continuously, exclusively, and adversely until, to wit, during the year 1913, when he sold and conveyed the same to Phillip Lee, who is one of the respondents in this case, by deed which purports to convey the entire title. That this respondent went into possession of said land under said deed and held and claimed the same as his own openly, notoriously, continuously, exclusively, and adversely until this suit was filed, and is still so claiming and holding same. That he (respondent) and those under whom he claims title have been in the open, notorious, continuous, exclusive, and adverse possession of said land for the past 25 years.

That on, to wit, the 27th day of October, 1905, the said W. H. Waters and wife, M. J. Waters, sold and conveyed the north half of the northeast quarter of section 10, and five acres in the northwest corner, of the northwest ¼ of northwest ¼ of section 11, in township 7, range 9 east, to L. L. Brantley, by deed which purported to convey the entire title. A true and correct copy of said deed as recorded in Deed Book 59, at page 68, probate records of said county, marked "Exhibit E," is hereto attached. That the said Brantley personally or by and through tenants went into possession of said land under said deed and held and claimed the same as his own openly, notoriously, exclusively, continuously, and adversely, until, to wit, 1st day of April, 1907, when he sold and conveyed the same to James K. Kyser, one of the respondents in this cause, by deed which purports to convey the entire title. A copy of said deed as recorded in Deed Book 59, at page 253, probate records of said county, marked "Exhibit F," is hereto attached. That on, to wit, second day of March, 1917, the said James K. Kyser sold and conveyed said property to P. W. Waters (one of the respondents in this cause) by deed which purports to convey the entire title. A true and correct copy of said deed as recorded in Deed Book 75, at page 236, probate records of said county, marked "Exhibit G," is hereto attached. That this respondent went into possession of said land under said deed and has held and claimed the same as his own openly, notoriously, exclusively, continuously, and adversely until this suit was filed, and is still so claiming and holding

the same. That respondent and those under whom he claims title have been in the open, notorious, continuous, exclusive, and adverse possession of said land for the past 25 years, or from June 8, 1897.

Respondents ask that said mentioned exhibits may be taken and considered as a part of this answer and cross-bill.

The answer was made a cross-bill with additional averments necessary to constitute a bill for removing cloud from title, etc.,

Barnett, Bugg & Lee, of Monroeville, for appellants.

The proof was upon the appellee to show that his father was dead. 49 Ala. 156; 28 Md. 497, 92 Am. Dec. 704–708; 17 C. J. 1167. Where the bar of the statute of limitations has begun to run for the ancestor before his death, it also runs for minors acquiring their right by descent. 175 Ala. 309, 57 South. 720; 112 Ala. 256, 20 South. 524. Twenty years' continuous possession is not defeated by personal disabilities. 72 Ala. 389. Homestead exemption to the widow in this case is governed by section 2821, Code 1876, but the manner of allotting it is governed by the law in force at the time of allotment. 81 Ala. 381, 2 South. 443. The homestead was abandoned by the widow. 97 Ala. 560, 11 South. 841; 94 Ala. 481, 10 South. 436; 166 Ala. 395, 52 South. 73; 204 Ala. 50, 85 South. 23.

Hybart & Hare, of Monroeville, for appellee.

The estate of the widow was a life estate, and after its termination the title and right of possession descended to the heirs of the deceased owner. 123 Ala. 541, 26 South. 285; 101 Ala. 375, 13 South. 568; 103 Ala. 614, 15 South. 897. Although Jeremiah McGlinn was entitled to possession jointly, so long as he remained a minor, his minority ceased upon his becoming of age. 68 Ala. 365; 55 Ala. 322. Between his attainment of his majority and the death of his mother in 1914, his right of possession ceased, and the statute could not run against him until 1914; hence any abandonment by the widow of homestead rights did not start the statute to running against Jeremiah. 118 Ala. 209, 23 South. 698; 127 Ala. 301, 28 South. 713.

SAYRE, J. Appellee filed the bill in this cause in 1918 praying that a certain parcel of land to be sold for division in lieu of partition. It is agreed that the facts are correctly stated in the pleadings, the substance of which will be stated in the report. There was a decree adjudging complainant to be the owner of a one-third interest in the property and that the same be sold for division.

[1] The family of Jeremiah McGlinn, complainant's father, have had no intelligence concerning him since 1903, and the presump-

tion will be indulged that he has been dead since 1910. Smith v. Smith, 49 Ala. 156; Modern Woodmen v. Ghromley, 41 Okl. 532, 139 Pac. 306, L. R. A. 1915B, 728, Ann. Cas. 1915C, 1063, where many of the cases on this subject are collected. Properly, then, in the absence of countervailing evidence, the trial court considered that the title of Jeremiah had descended to complainant.

[2] Complainant has not lost his interest in the property by adverse possession. No special equity intervening to put the onus of action on him (Huey v. Brock, 92 South. 904 [1]), neither the statute of 10 years nor the prescriptive period of 20 begins to run against a remainderman until he has a right to sue for the possession, that is, until the determination of the estate for life. Huey v. Brock, supra, and cases there cited. Appellants' theory of their case is that when appellee's grandmother in 1880, after the death of her husband through whom by inheritance appellee claims an undivided interest in the land, mortgaged the homestead—two of her children joining in the conveyance which purported to pledge the entire fee—suffered a foreclosure in 1894, and then removed from the place with her children to Montgomery county, leaving her homestead in the exclusive possession of the purchaser, under whom by mesne conveyances appellants claim, the statute of limitations began to run against appellee's father and so continued to run against appellee who succeeded to his rights.

[3, 4] Under the statute of force in 1880, section 2821 of the Code of 1876, only an estate for the life of the widow or the minority of the child or children, whichever terminated last, vested in them unless the estate of the deceased owner was declared insolvent, in which event only the absolute title to the homestead vested in the widow or widow and minor children. Subject to these provisions of the then statute, the title and right of possession vested in the heirs eo instanti the death of the ancestor intestate. Shamblin v. Hall, 123 Ala. 541, 26 South. 285. In the case here there was no declaration of insolvency. The exemption of this land from administration, the estate for life of the widow, under the facts in this case, continued until 1914, when the widow died. Nor did the fact that she had removed from the land work a forfeiture of her estate for life. Tartt v. Negus, 127 Ala. 301, 28 South. 713; Garland v. Bostick, 118 Ala. 209, 23 South. 698. The forfeiture considered in Banks v. Speers, 97 Ala. 560, 11 South. 841, occurred before the Act of February 28, 1889 (Laws 1889, p. 113), which declared that removal from the homestead should not operate a forfeiture to heirs or creditors so long as the widow and minor child or children

should continue to reside in the state. And in Tartt v. Negus, supra, the court said:

"If the widow may without occupation lease to others, no good reason appears why her entire right may not be disposed of by sale, and we think the act was intended to allow such disposition of the right as might best suit the interest of those for whose benefit the exemption was created."

[5] It may be conceded that, so long as Jeremiah McGlinn remained a minor, he was entitled to possession of the homestead jointly with his mother—though it may be matter of doubt whether the legislative intention was not that the mother might determine as matter of law the homestead rights of her children during their minority. But it seems to result from the statutes of that time and the cases to which we have referred that down to the death of his grandmother complainant's father had no right of possession as against his mother or her alienee, nor did complainant, and, if so, then under the rule of the cases adverted to the statute did not begin to run against complainant until 1914. But the lapse of time subsequent to that date has not sufficed to create a bar. It results that the decree of the trial court awarding complainant the relief prayed was correct.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.