289 So.2d 802

**Karen HAMMOND**

**v.**

**James SHIPP and Geneva Shipp Jeter.**

**SC 571.**

Supreme Court of Alabama.

Jan. 31, 1974.

Rehearing Denied Feb. 28, 1974.

Wilters & Brantley, Bay Minette, for appellant.

John M. Coxwell, Monroeville, for appellees.

FAULKNER, Justice.

James Shipp and Geneva Shipp Jeter filed a bill in equity in the Circuit Court of Monroe County, praying for land described therein to be sold for a division of the proceeds. The complainants alleged that they and respondents, consisting of thirty-one persons, plus the unknown heirs of three persons, were the heirs and next of kin of James D. Shipp who died in 1920. The bill alleged that Minnie Shipp, the widow of James D. Shipp, died in Mobile County in 1969. The bill further alleged that in 1920 James Shipp conveyed the subject land to his granddaughter, Nellie Ball Payne; that the deed was void because of a defective homestead acknowledgment and undue influence. It was further alleged that Nellie Ball Payne and husband conveyed the property to Nellie Hammond, Cecil Hammond, Karen Hammond, and John Hammond in 1959.

By answer respondents denied that the subject land was the homestead of Minnie Shipp and that James Shipp was of sound mind when he conveyed the property for a valuable consideration, and no undue influence was exercised. It was averred that Minnie Shipp abandoned the homestead, and lost her rights by a prior conveyance; that if she ever had any rights they were lost under the rule of repose. It was further averred that appellants had been in continuous possession of the property under color of title since the date of purchase, and had paid the taxes, and had no knowledge of interest or claim of complainants since 1920. By amended answer it was averred that the claim of complainants was barred by the statute of limitations; that respondents held title by adverse possession under color of title for ten years; that the claim was barred by prescription; that complainants were guilty of laches.

The evidence was heard ore tenus.

James D. Shipp married Minnie Sherman in 1902, and they had two children—Geneva and her brother, James. James D. Shipp was previously married before he married Minnie, and by this wife he had six children. Minnie Shipp went to Birmingham in 1916, leaving James D. Shipp in Monroe County with the two children who were minors. There was no evidence of any divorce. In 1918 Minnie supposedly "married" a Mr. King in Birmingham. A marriage certificate was introduced into evidence showing a marriage between H. H. King and *Mossey* Shipp on December 4, 1918 in Birmingham. The certificate showed King to be *55* years of age and Mossey Shipp to be *28* years old.

A birth certificate was introduced showing the birth of Henry Harrison King, Jr. on November 10, 1919. The father is shown to be Henry H. King, of the white race, and age not shown. The mother is shown to be Minnie Sherman, before her

marriage, age 31 years old, and of the white race. Another marriage certificate recorded in Jefferson County, Alabama, was introduced into evidence showing the marriage on September 7, 1938, of John S. Thomas, born December 18, 1899, and Mossey King, born in August, 1901.

James D. Shipp executed a deed to Nellie Ball, his granddaughter, on April 24, 1920, purporting to convey the subject land, which was the 90-acre homestead, to her. The deed was signed by James D. Shipp, by his mark, and James Shipp by his mark as attorney in fact for Minnie Shipp. Minnie Shipp did not sign the deed. The acknowledgment reads,

"I, Frank S. Stone a Notary Public for said county, in said State, hereby certify that James D. Shipp individually and Minnie Shipp by James D. Shipp her attorney in fact whose names are signed to the foregoing conveyance, and who are known to me, acknowledged before me on this day that, being informed of the contents of this conveyance, they executed the same voluntarily, on the day the same bears date.

"Given under my hand and seal this the 7th day of April A. D. 1920."

The deed was filed for record on April 24, 1920.

The two Shipp children were minors at the date of the deed.

The power of attorney under which James D. Shipp acted was dated October 30, 1919, and signed by Minnie Shipp by her mark. The power of attorney provided:

"This is to certify that on this day I Minnie Shipp now the lawful wife of J. D. Shipp do come before a Notary Public to take oath to the statement written below. Be it known that I Minnie Shipp being over the age of twenty one years of sound mind and disposing memory do hereby give J. D. Shipp authority to sell any property belonging to him just as he may see fit. Also J. D. Shipp has the right to put my signature to any deed or paper of any kind concerning sale or mortgage of his property I being personally known as his wife do sign this before witnesses."

The power of attorney was filed for record on April 24, 1920.

James D. Shipp died in 1920 after having executed the deed to Nellie Ball. She held the property until she and her husband allegedly conveyed the land to the Hammonds on January 27, 1959. During the period that she held the land Nellie Ball mortgaged the land at various times, leased the oil rights, turpentined the land, sold timber off it, and farmed it.

The record shows that James D. Shipp was an old man when he executed the deed to Nellie Ball. The evidence of complainants tended to show he was mentally incompetent to execute a deed. Evidence of respondents tended to show that he knew what he was doing, and was of sound mind. Complainants' testimony was to the effect they knew nothing of the deed until 1971, when Nellie Ball died.

The trial court made its findings of fact, finding that on December 27, 1920, the date of the death of James D. Shipp, Minnie was his lawful widow; that the presumption in favor of the validity of marriage of one Mossey Shipp to H. H. King on December 4, 1918, was rebutted and overcome by the direct statements contained in the purported power of attorney executed by Minnie Shipp on October 30, 1919. The court further found the marriage of James D. Shipp and Minnie Sherman had not been dissolved at the date of death of James D. Shipp. The court found the land to be all the land owned by James D. Shipp and was his homestead; that the deed from James D. Shipp and Minnie Shipp, by James D. Shipp as her attorney in fact, to Nellie Ball on April 7, 1920 was null and as not being properly executed by the wife as required by § 4161, Code of 1907; that the homestead could not be conveyed by a power of attorney. The court further found that Minnie Shipp acquired

homestead rights on the death of her husband; that she acquired a life estate in the property which terminated on her death in 1969. The court further found that the property had been in possession of Nellie Ball Payne, granddaughter of James D. Shipp, for her lifetime and then on her death in the possession of her daughters, Nellie Lucille Hammond, and Karen Hammond, all being direct lineal descendants and heirs of James D. Shipp; that no other person other than the direct lineal descendants and heirs of James Shipp has ever been in possession of the lands since his death; that such possession was not adverse to the remaindermen or other heirs of James D. Shipp. The court ordered the deed from James D. Shipp and Minnie to Nellie Ball be declared null and void and granted the relief prayed for in the bill by ordering the land sold for division of the proceeds.

■ Code 1907, § 4160 provides that the homestead of every resident of this State with the improvements and appurtenances, not exceeding in value $2,000, and in area one hundred and sixty acres, shall be exempt from levy and sale under execution or other process for the collection of debts during his life and occupancy, and if he dies leaving a widow and minor children, the exemption extends during the life of the widow and minority of the children. Section 4161 of this Code provides that "No mortgage, deed, or other conveyance of the homestead by a married man shall be valid without the voluntary signature and assent of the wife, which must be shown by her examination, separate and apart from him, before an officer authorized by law to take acknowledgments . . ." Section 4161 of this Code further provides for the form of acknowledgment to be used when the homestead of a married man is alienated. In addition to being examined separate and apart from her husband, the acknowledgment must show that the wife signed the conveyance of her own free will and accord, and without fear, constraints or threats on the part of her husband. In Burrows v. Pickens, 129 Ala. 648, 29 So. 694 (1900) this court held that a conveyance of the homestead, which, although signed by the wife, was invalid and passed no title, since the acknowledgment did not show the wife was examined separate and apart from her husband. In Daniels v. Lowery, 92 Ala. 519, 8 So. 352 (1890), recital in the acknowledgment that the wife signed the conveyance of the homestead of her own free will and accord and without fear, constraint, or *persuasion* on the part of the husband rendered it void. The court said that the word "persuasion" was no substitute for the word "threats". In McGuire v. Van Pelt, 55 Ala. 344 (1876) this court stated that a conveyance of the homestead by the husband alone is invalid and inoperative. This court has consistently held in cases brought under the Code section before us that a conveyance of the homestead by the husband alone or defectively executed by the wife is a nullity. *McGuire,* supra, Miller v. Marx, 55 Ala. 322 (1876); Balkum v. Wood, 58 Ala. 642 (1877); Vancleave v. Wilson, 73 Ala. 387 (1882); DeGraffenried v. Clark, 75 Ala. 425 (1883); Alford v. Lehman, Durr & Co., 76 Ala. 526 (1884).

■ These cases state the rule of law in this State as it applies to the separate acknowledgment by the wife, until it was changed by statute in 1951. See Title 7, § 626, Code of Alabama, 1940. The deed in this case is construed according to the law in effect at the time of the purported conveyance. We conclude that the purported deed to Nellie Ball was null and void if Minnie Shipp was the wife of James D. Shipp at the date of the conveyance. We now decide, under the facts of the case, whether she was his wife and if so, what interest she took in his estate. The trial court found that Minnie Shipp was the wife of James D. Shipp on the date of the conveyance, and took a life interest in his estate.

**118**

■ Not only the deed, but also the power of attorney stated that Minnie Shipp was the lawful wife of James D. Shipp on the date of the deed to Nellie Ball. This is what the trial court based his findings of fact on. Unless the trial court was plainly and palpably wrong, this court should affirm. Jones v. Case, 266 Ala. 498, 97 So.2d 816 (1957). The findings of fact and the decree of the trial court, where the case is heard ore tenus will not be disturbed unless it is plainly and palpably wrong. Hyatt v. Compton, 262 Ala. 649, 80 So.2d 650 (1955); Meadows v. Hulsey, 246 Ala. 261, 20 So.2d 526 (1945).

The trial court duly noted that a divorce is presumed by a second marriage. But, the court found that the presumption of a divorce was rebutted by evidence of Mr. Shipp's daughter, Geneva, the power of attorney of Minnie Shipp stating she was the lawful wife of James D. Shipp, and the deed itself, where James D. Shipp recognized Minnie as his wife. Although the marriage certificates appear to be valid on their face, a close examination renders them suspect. The marriage certificate evidencing the marriage of H. H. King and Mossey Shipp shows King's age to be 55 years. It shows the age of Mossey Shipp to be 28 years. By a mathematical calculation, if *Minnie* and *Mossey* are one and the same person, Minnie would have been twelve years old when she married James D. Shipp in 1902. And, by examination of the marriage certificate of the Thomas

marriage in 1938, showing the birth date of Mossey Shipp to be 1901, she would have been one year old when she married James D. Shipp in 1902.

■ The presumption that a prior marriage has been dissolved should be accepted with caution and must yield so as not to require courts and juries to presume as true that which is probably false. The presumption of an innocent second marriage is overcome when circumstances require a reasonable inference to the contrary. Freed v. Sallade, 245 Ala. 505, 17 So.2d 868 (1944); Sloss-Sheffield Steel & Iron Co. v. Watford, 245 Ala. 425, 17 So. 2d 166 (1944); Jordan v. Copeland, 272 Ala. 336, 131 So.2d 696 (1961).

■ Under the facts of this case we are unwilling to say the trial court was plainly and palpably wrong when he found the presumption of a dissolved prior marriage was overcome by the evidence before him, and agree with the trial court that Minnie Shipp was the widow of James D. Shipp at his death. Jones v. Case, supra.

We now turn to the question of the interest of Minnie Shipp in the estate of James D. Shipp at the date of his death. Under § 4196, Code of 1907,[1] the widow and minor children received a life estate to their equal benefit during the life of the widow or the minority of the minor children whichever may last terminate. Kyser v. McGlinn, 207 Ala. 82, 92 So. 13 (1921). It does not appear that the estate was in-

[1]. 4196. Homestead exemption in favor of widow and minor children.—The homestead of any resident of this state, leaving surviving him at his death a widow and minor child or children, or either, with the improvements and appurtenances not exceeding in value two thousand dollars, and in area one hundred and sixty acres, shall be exempt from administration and the payment of the debts in favor of such widow and minor children, or either, in any event, during the life of the widow, or the minority of the child or children, whichever may last terminate; and the rents and profits of such homestead if there be a widow and no minor child, shall enure to here benefit during her life; or if there be a minor child or children, and no widow, then to the benefit of such child or children during minority; or if there be both widow and minor child or children, then to their equal benefit during the life of the widow and the minority of the child or children. Such homestead may be retained by the widow or minor child or children, until it is ascertained whether the estate is solvent or insolvent; and if the estate is insolvent, it shall vest in them absolutely, and shall not be sold or partitioned by order of any court until the death of the widow and the youngest child is of age, except by the order of the chancery court for reinvestment with the consent of the widow in writing, if living.

solvent. Had the estate been insolvent they would have received an absolute interest if set apart by administration.

The fact that the widow was not living with the decedent at his death does not affect her life interest in the property. In Coker v. Coker, 160 Ala. 269, 49 So. 684 (1909) the sole question for determination was whether the widow who had lived apart from the husband for two or more years prior to his death, but between whom there had been no dissolution of the marriage, was entitled to the homestead exemption. The court held that the statute does not make separation terminate the widow's right, and it would be judicial legislation if the courts should do so. The court quoted from Nolen v. Doss, 133 Ala. 259, 31 So. 969 (1901) that,

"The law, as it is written, is plain, and it is not within the province of the courts to engraft upon it any exceptions. As long as the marriage relation, in law, continues, just so long the rights of the wife under this statute exist."

See Curry v. Barnes, 200 Ala. 256, 76 So. 22 (1917). Since the property did not exceed the value of $2,000 and 160 acres, there was no necessity of having the homestead set aside to the widow and minor children. Garland v. Bostick, 118 Ala. 209, 23 So. 698 (1897); Jackson v. Wilson, 117 Ala. 432, 23 So. 521 (1897). It is only where the widow seeks to have the homestead vest in her in fee that she must have it set apart to her by an administration of the estate. O'Daniel v. Gaynor, 150 Ala. 205, 43 So. 205 (1907); Medley v. Shipes, 177 Ala. 94, 58 So. 304 (1912).

The possessory right to the homestead was enjoyed concurrently and successively during the life of the widow or minority of the children or any one of them, whichever may last terminate. Buchannon v. Buchannon, 220 Ala. 72, 124 So. 113 (1929); Bishop v. Johnson, 242 Ala. 551, 7 So.2d 281 (1942). *Buchannon* limits the widow and minor children to a period of twenty years to have an appropriate judicial determination to set apart the homestead to them in fee. Thus, having a possessory right to the homestead during her lifetime the widow did not abandon this right by not residing on the property after the death of James D. Shipp.

Finally, we come to the questions of adverse possession, prescription and laches. The rule is firmly established in this State that until the termination of the life estate the remaindermen have no right of action to recover possession of the land. The statute of limitations never runs against the remaindermen during the existence of the life estate for the reason that no cause or compelling right of action is in them, nor can there be any adverse possession to the remaindermen. Pickett v. Doe, 74 Ala. 122 (1883); Bolen v. Hoven, 143 Ala. 652, 39 So. 379 (1904); Dallas Compress Co. v. Smith, 190 Ala. 423, 67 So. 289 (1914); Bishop v. Johnson, supra; Head v. Taylor, 272 Ala. 241, 130 So.2d 4 (1961); Monte v. Montalbano, 274 Ala. 6, 145 So.2d 197 (1963). And, while the remainderman may maintain an action to remove a cloud on his reversion during the pendency of the life estate, he is under no duty to do so and cannot be guilty of laches if he does not do so. Huey v. Brock, 207 Ala. 175, 92 So. 904, cert. denied 259 U.S. 581, 42 S.Ct. 585, 66 L.Ed. 1074 (1922). The twenty year period of prescription does not begin to run until the death of the life tenant. *Huey*, supra; Kyser v. McGlinn, supra. Therefore, prescription is not applicable in this case.

After a careful review of the record we cannot say the decree of the trial court was plainly and palpably wrong.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD and MADDOX, JJ., concur.