# Smith *v.* Smith.

*Petition to enjoin Executions issued on Decree for Alimony.*

1. *Chancellor's decree on evidence.* — The rule is established by the decisions of this court, that when the chancellor's decree rests on his conclusions from the evidence, it will not be reversed unless there is a strong preponderance of the evidence against its correctness.

2. *Presumption of death of absent person, from lapse of time without intelligence.* — The presumption of the death of an absent person, after the lapse of seven years without intelligence, has less force here than in the country where the law on this subject originated, and does not arise where the absent person is known to have acquired a domicil in another state; and where the presumption is sought to be established by the affidavits of witnesses who have no interest in the absent person, being neither relatives, friends, nor members of the family, their testimony is overcome and destroyed by the testimony of one credible witness, who is well acquainted with the absent person, knows his handwriting, and has received a letter from him within the period of seven years.

APPEAL from the Chancery Court of Randolph. Heard before the Hon. B. B. McCRAW.

FOSTER & FORNEY, for appellant.

W. H. SMITH & C. D. HUDSON, *contra.*

PECK, C. J. — This case was submitted on the part of appellee's counsel as a delay case, and on behalf of appellant,

on the errors assigned, without briefs. The record was examined, and no error being discovered, the decree of the chancellor was affirmed. The appellant's counsel now make an application for a rehearing.

The case was commenced by petition in the Chancery Court, and prayed that certain executions issued against appellant, in favor of appellee, might be enjoined. An injunction was issued, and, after the case was several times continued, the matter of the petition was submitted on affidavits, filed by appellant and by the counsel of appellee. The chancellor dissolved the injunction, and dismissed the petition, and ordered the register to reissue the executions, with six per cent. damages. The case made by the record may be stated as follows : —

In 1859 petitioner was divorced from his wife, said appellee, by the decree of said Court of Chancery, and one hundred dollars was decreed to appellee for alimony, to be paid by appellant annually, and that executions should be issued to collect the same, if not paid. The executions prayed to be enjoined were issued to collect said alimony. The ground upon which they were sought to be enjoined was the alleged presumed death of the appellee. The petition states that, soon after said decree of divorce, or shortly before, said appellee left the State of Alabama and went West ; that no executions were issued to collect said alimony, as far as petitioner was advised, until some time in the year 1867, when several executions were issued for the alimony due up to that time ; that said executions were issued, as petitioner was informed, at the instance of appellee's attorneys ; that soon after said executions were issued, appellant filed his bill in said Chancery Court, alleging that appellee had intermarried with a man by the name of Gwin, in Texas, and had been married since 1863, and prayed for a *supersedeas* or other restraining order against the collection of said executions ; that said bill was finally heard in 1868, and a decree rendered that petitioner should pay a certain amount for back alimony and cost, which he paid ; that some time afterwards, said cause was removed to the Supreme Court by appellee's attorneys, and the said decree was reversed and the bill was dismissed. The petition further states, that petitioner had not heard from appellee since the year 1864 ; that he had recently been to Texas for the purpose of ascertaining the residence of appellee, and to bring about a settlement of her claim to alimony, but could find no trace of her, and that he believed she had departed this life.

The affidavits upon which said petition was heard, on the part of appellant, consist of five besides that of petitioner. Some of said affidavits merely state that affiants knew appellee at the time appellant was divorced ; that about that time

[Smith *v.* Smith.]

appellee left the county, and it was said the State, and that they had not seen or heard from her since. Some go further, and state that affiants had recently been to Texas, and travelled through several counties, and made inquiries for appellee of persons that had known her in Alabama, and that none of the persons of whom inquiries were made, knew anything of her. On the part of appellee, the affidavit of W. H. Smith was in evidence, which states that affiant, in 1867, received a letter from appellee, in which she made inquiry about her allowance of alimony; that he was well acquainted with appellee, and knew her handwriting, and knew said letter was written by her; that since the last term of said court he had received a letter from a gentleman, whose statements he firmly believed, who said appellee was then alive, and stated her post-office, and her circumstances and condition in life.

Now, conceding that appellant's petition is not without equity (which is by no means free from doubt), then the only question to be decided by the chancellor was one of fact; whether, on the whole evidence, there was a reasonable presumption that appellee was dead at the time the appellant's petition was filed. On the rule established by the decisions of this court, that where a decree rests upon the conclusions of the chancellor from the evidence it will not be disturbed unless there is a strong preponderance of evidence against its correctness, the decree in this case must be affirmed. The affidavits on behalf of the appellant, in the absence of any countervailing evidence, can hardly be said to raise the presumption which the law requires in such cases. It is admitted, the books say, that where the issue is upon the life or death of a person, after seven years' absence, without intelligence concerning the person, the presumption of life ceases, and the burden of proof is devolved on the other party. 1 Greenl. Ev. § 41. But considering the great length and breadth of this country, and the migratory character of the people, the presumption has less force here than in the country where the law on this subject originated; and in a majority of cases there is probably little doubt such presumptions are, in fact, contrary to the truth. They should not, therefore, be permitted to be too easily or too readily established.

In cases of this sort, it seems to me, the evidence of parties having no particular interest in the person whose life or death is in issue, not being relations, friends, or members of the family, — parties with whom the absent person, if alive, would not be likely to have any correspondence; for example, acquaintances merely, or former neighbors, — deposing to the absence of the person, and that there had been no intelligence concerning him; that they had not heard of him for a period

[Roddy *v.* McGetrick.]

of seven years, should have but little weight. This is the case
with all the parties, the appellant himself excepted, whose
affidavits were read on his behalf. When these affidavits are
considered in opposition to the affidavit of W. H. Smith on
the part of the appellee, in which he deposes that he was well
acquainted with appellee, and knew her handwriting, and
that within the period of seven years, to wit, within the period
of four years, he had received a letter from her on the subject
of her alimony, and knew the said letter was in her hand-
writing ; the evidence to sustain the petition, and raise a rea-
sonable presumption that appellee was dead, instead of greatly
preponderating against the correctness of the chancellor's de-
cree, is overcome and destroyed by the affidavit of said W. H.
Smith ; add to this the probability that appellee was alive
at the time (1868) when appellant filed his bill to supersede
executions that had been issued to collect appellee's alimony,
due before that time, on the ground, not that she was dead,
but had intermarried with a man by the name of Gwin ; and
furthermore, that no inquiries were made for her by appellant's
witnesses in this case by her newly acquired name of Gwin.
If she was married in 1863, it would hardly be expected she
would be found in 1872, by inquiries made for her by the name
of Smith. And, finally, inasmuch as it is admitted in the
petition that appellee was married in Texas in 1863, and
thereby acquired a residence and home in that State, and in-
telligence of this was known to appellant in 1868, when he
filed his bill against her in said Chancery Court, the ground
and foundation of the presumption of death that might oth-
erwise have arisen was thereby destroyed ; as such presumption
will not be made as to one who has acquired a home and dom-
icil in another state, and this is known in the state of his for-
mer residence.

Without pursuing this matter further, I am satisfied the de-
cree of the chancellor was properly affirmed. The application
for a rehearing is, therefore, denied, at appellant's cost.