144 So. 33

**METROPOLITAN LIFE INS. CO. v. JAMES.**

*8 Div. 361.*

Supreme Court of Alabama.

Oct. 6, 1932.

Rehearing Denied Nov. 10, 1932.

Eyster & Eyster, of Decatur, and W. H. Mitchell, of Florence, for appellant.

L. A. May and Simpson & Simpson, all of Florence, for appellee.

**BOULDIN, J.**

The action is on a life insurance policy.

The contract stipulated the insurer shall incur no liability until "a policy is issued and delivered, and the full first premium stipulated in the policy has been paid to and accepted by the Company during the lifetime of the applicant."

By appropriate pleas this provision was set up with allegations that the policy was never delivered, nor the full first premium paid, during the life of the insured.

The controlling issues of law and fact relate to this defense.

Roosevelt James, the insured, made application through the local agent of defendant at Florence for the policy in question, naming his brother, Jesse James, the plaintiff, as beneficiary.

The application was approved, and the policy, dated December 10, 1930, was issued at the home office, and forwarded to the local agent to be delivered upon payment of the first quarterly premium. The insured resided at Florence, but was working as a farm laborer in the employ of Mr. Blalock, at Seven Mile Island, in the Tennessee river, several miles below Florence. Leaving funds to pay the first premium in the hands of the plaintiff, the insured went back to Seven Mile Island. The policy remained in the possession of the local agent, Mr. Hester, until late in the afternoon of December 24th, when plaintiff, the beneficiary, paid the premium and received the policy.

Meantime, however, the insured had disappeared under circumstances discussed later. His body was found in the waters of the Tennessee river near Seven Mile Island on February 3, 1931. Thereupon, the plaintiff prepared and forwarded to the insurer proofs of death. In the sworn statement of plaintiff, as claimant of the proceeds of the policy, the following appears touching the insured: "4. Date of Death. Last seen on December 20, 1930, crossing Tenn. River, near where he was found. 5. Cause of Death. Supposed to have drowned in Tenn. River. 6. Place of Death. Tenn. River near 7 Mile Island."

In the "Statement of Friend" forwarded by plaintiff as part of the proof of death, this appears: "6. State date of Death. December 20."

And the "Statement of Physician" the following: "3. Date of Death? Month, December, Day 20, Year 1930. * * * 5. Place of Death? Tenn. River near 7 Mile Island. 6. Cause of Death? Supposed to have drowned in Tenn. River."

The evidence thus far being without conflict, we consider the governing rules of law.

The issuance of the policy, the possession of same by the beneficiary, with recitals or other proof that the first premium had been paid, with evidence of death of the insured, and that notice and proof of death have been furnished the insurer as required by policy, without more, made out a prima facie case for plaintiff. It discloses a subsisting contract of insurance, and a maturity of the demand by the death of the insured, with notice and formal proof of same. National Life & Accident Insurance Co. v. Winbush, 215 Ala. 349, 110 So. 571; Watts v. Metropolitan Life Ins. Co., 211 Ala. 404, 100 So. 812, 813.

The stipulation of the contract prepared by the insurer in keeping with the application to the effect that no obligation should be incurred unless the policy was delivered and first premium paid while the insured was alive, was within the clear legal right of parties to prescribe the events upon which a life insurance contract shall come into being. If the insured died on December 20th, or prior to December 24th, when the premium was paid and the policy delivered to the ben-

eficiary by the local agent, there was no contract. The whole matter remained in negotiation merely. The agency of the beneficiary to pay the premium and receive delivery was revoked by death.

In several of our cases policies have provided in effect that no liability is incurred unless when the premium is paid and policy delivered the insured is "alive and in sound health." The stipulation as to sound health is, by virtue of our statutory provisions, construed as a warranty. Mutual Life Ins. Co. v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A. L. R. 649.

But the stipulation that the insured must be alive involves a different principle. If dead, there is no one to make a warranty, no one to contract, no life to insure; hence no contract ever comes into existence. Ivie v. International Life Ins. Co., 217 Ala. 559, 117 So. 176; 69 A. L. R. 562, note.

■ We come, then, to consider the proofs of death as evidence in support of this defense. Proofs of death furnished by the beneficiary to the insurer in accordance with the terms of the policy are prima facie evidence of the facts therein stated, as against the beneficiary, and, when not explained or rebutted, are conclusive. Union Mutual Aid Ass'n of Mobile v. Carroway, 201 Ala. 414, 415, 78 So. 792; Mutual Ben. Life Ins. Co. v. Newton, 22 Wall. 32, 22 L. Ed. 793; Hanna v. Connecticut Mut. Life Ins. Co., 8 Misc. 431, 28 N. Y. S. 661, affirmed 150 N. Y. 526, 44 N. E. 1099; Abraham v. Mutual Reserve Fund Life Ass'n, 183 Mass. 116, 66 N. E. 605; Felix v. Fidelity Mutual Life Ins. Co. of Philadelphia, 216 Pa. 95, 64 A. 903; 8 Rose Notes 784; 37 C. J. 560, § 316, and notes.

The proofs of death furnished the company, consisting of the statement of claimant and others sent in by him, disclosed December 20th as the date of death of the insured so far as known or believed by the witnesses. Claimant answered the question by giving date last seen crossing Tennessee river near where the body was found, and the cause of death "supposed to have drowned in Tennessee River," and place of death the same. Other statements are less qualified.

Taken together, this proof could not be construed by the company other than an admission on oath that to the best of the knowledge, information, and belief of affiants the insured came to his death on December 20th; that therefore the insurance was never in force.

This proof, unrebutted, made out a prima facie case of no liability. Was there rebutting evidence making a jury question as to the date of death?

■ The evidence for defendant tended to show that on December 20th the insured was at Seven Mile Island, his place of employment; that he made an engagement with Em-

mett Anderson to take him to Florence that evening, and appointed a place for their meeting; that he did not keep the engagement, but was last seen in a boat on the river in swift water near the Island; that he was never again seen alive; that a report of his being missing became current in Florence within a day or two; the plaintiff, his brother, to take his statement, was informed insured was missing the evening of Tuesday, December 23d; that inquiries were made about Florence, which disclosed he had not been at his home, nor that of his mother, nor seen by friends on Saturday or thereafter; that on Wednesday, December 24th, plaintiff went down to Seven Mile Island in search for him or evidence of his disappearance. On that day a body of men were dragging the river in search of the body of deceased. On return to Florence late that afternoon, plaintiff went to the local agent, paid the quarterly premium and received the policy, telling the agent nothing of the disappearance of his brother, the insured.

The body was found in the river on February 3d, not very far from the place last seen. Thereupon the plaintiff made out and forwarded the proofs of death.

There was further testimony of two witnesses for plaintiff to the effect that they saw the insured on the streets of Florence on Saturday night, December 20th; other evidence of tracks of one running on certain small islands or "Tow Heads" near Seven Mile Island; and defendant introduced in evidence an affidavit or contents thereof made after the discovery of the body, by another brother of insured, charging certain parties with the murder of deceased by striking him with some blunt instrument or in some other manner to affiant unknown. This affidavit named the date of the alleged killing on or about December 20, 1930.

Appellee urges that the place the body was found in the river, by reason of the course of the current, negatives the idea of his having been drowned at the place last seen or in the direction he was rowing. Appellee strongly urges that this evidence rebuts the prima facie case for defendant as to date of death, and justifies a finding that death had not intervened on December 24th. Appellant urges a contrary view.

Clearly this evidence controverts that tending to show a drowning on the afternoon on the occasion he was seen by Anderson, and the supposition that this was the cause of his not meeting his appointment to go to Florence.

For purposes of this decision, we assume the same evidence tends to disprove the theory of death by drowning, and lends support to the idea of a violent death, and possible casting the body in the river for purposes of concealment.

564

The affidavit offered by defendant was due to be considered along with all the other evidence. A jury question as to cause of death was presented.

But what does this evidence prove as to the date of death?

Appellee urges the doctrine of presumption of the continuance of life.

The seven-year presumption of continued life under conditions defined by law is fully recognized. Kyser et al. v. McGlinn, 207 Ala. 82, 92 So. 13; Smith v. Smith, 49 Ala. 156; Reid v. State, 168 Ala. 118, 53 So. 254.

Clearly we are not dealing with a case where proof of death from long absence is involved. The fact of death is known from the finding of the dead body. In ascertaining the time or date of death in such case, all the facts and circumstances are to be considered. 17 C. J. 1178, § 31.

Where, as here, there was unexplained failure to appear at his place of employment, a sudden disappearance under conditions at once provoking an apprehension of death and vigilant search, no evidence of his having gone out of the zone of his habitation and employment, followed by finding of his body six weeks later in the river, at a point within the area of his usual activities, the natural inference is there was an immediate causal connection between his disappearance and death; that disappearance was due to his death. Finding the body accounts for such disappearance. The date of one is presumably the date of the other.

Whatever the true version as to the cause or manner of death, all the evidence is that the insured was never seen alive after the night of the 20th, and full search was under way prior to the 24th.

The possibility that he may have still been alive after four days, and came to his death somewhere in some way at a later date may be conceded. But no such presumption is to be indulged, nor reasonable inference drawn. Such theory can rest only upon pure surmise and conjecture.

The undisputed facts corroborate rather than rebut the proof of death, as well as the affidavit of the brother, to the effect that death occurred at the time of the disappearance of the insured on December 20, 1930.

It follows appellant was entitled to the affirmative charge as requested.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.