153 So. 759

## METROPOLITAN LIFE INS. CO. v. JAMES.
### 8 Div. 507.

Supreme Court of Alabama.
March 22, 1934.

■

■

■

Eyster & Eyster, of Decatur, and W. H. Mitchell, of Florence, for appellant.

Lawrence A. May and Simpson & Simpson, all of Florence, for appellee.

THOMAS, Justice.

The complaint was substantially in the form prescribed by the Code for a declaration on a policy of life insurance. Section 9531, form 12, Code 1923.

The first appeal is reported, Metropolitan Life Ins. Co. v. James, 225 Ala. 561, 144 So. 33.

Defendant filed special pleas setting up contract provisions alleged to have been broken. Plea 3 contained, among others, the following averments:

" 'This policy is issued in consideration of the application therefor, copy of which application is attached hereto and made a part hereof.

" 'The provisions and benefits printed or written by the Company on the following pages are a part of this policy as fully as if recited over the signatures hereto attached.

" '4. Entire Contract. This policy and the application therefor constitute the entire contract between the parties and all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid this policy, or be used in defense of a claim hereunder unless it be contained in the application therefor, and a copy of such application is attached to this policy when issued.'

"The defendant alleges that the application for said policy made by the said Roosevelt James was attached to and became a part of said policy, and that said application, and therefore the policy, contained terms and provisions and conditions as follows:

" 'It is understood and agreed that the Company shall incur no liability under this application until it has been received, approved, and a policy is issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by the Company during the life time of the applicant in which case such policy shall be deemed to have taken effect as of the date of the insurance as recited on the first page thereof.'

"The defendant alleges that *said suit policy was never delivered, and that the full first premium stipulated in the policy was not actually paid* to and accepted by the Company *during the life time of the applicant.*" (Italics supplied.)

On the second trial the defendant filed pleas of non est factum (pleas 15 and 16) pursuant to the former decision (Metropolitan Life Ins. Co. v. James, 225 Ala. 561, 144 So. 33), and plea 17, adopting plea 3 and further averring:

"The defendant alleges that the plaintiff herein called at the office of the defendant company on the afternoon of December 24th, and requested a delivery of the policy to him at that time, and the defendant alleges that at the time the plaintiff so called at its office asking for delivery of the policy to him, that the said plaintiff knew at such time that his brother, Roosevelt James, the insured, had been reported as being drowned in the Tennessee River, and that said plaintiff had been to the Tennessee River at the place where his brother was reported to have been drowned and had seen and known of parties searching at the River by dragging the River for the remains of his brother Roosevelt James, the insured, and the defendant alleges that it was the duty of the said plaintiff to then and there have disclosed to the said defendant that the insured, Roosevelt James had been reported as being drowned, and that *he purposely refrained from giving the said defendant this information, and the defendant alleges that if it had had such information, said policy would not have been turned over to the said plaintiff, nor the premium taken therefor, and the defendant alleges that it did not know at said time that the said Roosevelt James was reported drowned.*" (Italics supplied.)

Demurrer was sustained to plea 17, and that ruling is assigned as error.

There was joinder in issue on such pleadings, a jury, verdict, and judgment for the plaintiff, and a motion for new trial, which was overruled.

The evidence shows that the application for insurance was made on December 4, 1930, that on December 24th the first premium was paid by, and the policy delivered to, the beneficiary, a brother of deceased, and that the body of assured was taken from the Tennessee river on February 3, 1931, at a place called Seven Mile Island. The policy in evidence contained the following provisions:

"This policy is issued in consideration of the application therefor, a copy of which application is attached hereto and made part hereof, and of the payment for said insurance on the life of the above named insured. * * *

"This policy and the application therefor constitute the entire contract between the parties, and all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid this policy or be used in defense of a claim hereunder unless it be contained in the application therefor and a copy of such application is attached to this policy when issued. * * *

"That the company shall incur no liability under this application until it has been received, approved, and a policy issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by the company during the lifetime of the applicant, in which case such policy shall be deemed to have taken effect as of the date of issue as recited on the first page thereof."

The beneficiary as a witness for himself as plaintiff testified as follows:

"I never did see Roosevelt alive after December 4th. I was living here in town all that period of time. I was at the Tennessee River at Seven Mile Island on February 3rd when his body was recovered.

"Q. *And you had been down to the river searching for his body, either yourself or with your friends, December 24th, had you not? Between December 24th and February 3rd?* A. Yes sir.

"We were not dragging all the time in the neighborhood of Seven Mile Island and the Towheads. We were not dragging practically every day. They dragged for awhile but not practically every day.

"Q. And when you started in dragging on December 24th you kept it up every day for awhile? A. Did not begin till after Christmas. I did not just testify that I started dragging on the 24th. I said after Christmas. I was not down there on Christmas day. I worked in Florence in December, 1930. George Simpson worked at the same place. George Simpson and I would not go to work together every day.

"Q. *On the morning of December 23,* which was *Tuesday morning before Christmas* on Thursday, George Simpson told you he heard your brother Roosevelt was missing did not he, and that they were looking for him? A. He told me they had been looking for him to go to work. * * *

"Q. *Well, on Tuesday afternoon you went down to Eula Austin's house and asked her if she knew where Roosevelt was, didn't you?* A. *Yes, I went to her house Tuesday. I don't know whether it was after noon or before noon.* It was not after I heard he was missing that I went down to Eula's. I had not heard he was missing. I had not heard that they could not find him. I had heard that he had not showed up on the work down there. It was after that I went to Eula's.

"Q. Were you looking for Roosevelt? A. No sir. I went down to see Eula.

"Q. To see if she knew where he was? A. To see the last time she saw him." (Italics supplied.)

The witness then testified that on December 24th he and others went to the river at Seven Mile Island and walked about at such place, not looking for assured, did not inquire whether deceased had been seen, came back to Florence, went to the office of defendant, paid the agent the premium, and the policy was delivered. The witness said: "I don't remember Mr. Emmett Anderson telling me that the last time he saw Roosevelt was on the river in a skift. Where they found Roosevelt was a good piece from the towhead I went to on Wednesday morning and in different stream. I guess it was about a mile away. * * * We came back to town that afternoon. . I went up to the Metropolitan Life Ins. Cos. office that evening. * * * I had been down to the river that day. Across the river to the towhead and to Seven Mile Island and came back to town and went to the Metropolitan Company's office. I paid Mr. Hester the difference between $5.18 and $1.50. Mr. Hester asked me did I know where Roosevelt was. I told him I didn't know. * * * That was Christmas Eve. I didn't go back to the river on December 25th. I don't remember whether I went back on the 26th. * * * I told him (Dr. Hubbard) that he was missing on December 20th, or that they had not seen him on his work since December 20th. I don't remember whether he asked me or my brother about it. My brother and I were together with Dr. Hubbard."

It is then recited: "The defendant at this point introduced in evidence the affidavit and warrant of arrest signed by Matthew James, February 4, 1931, before J. T. McPeters, charging Raymond Crittenden and Henry Crittenden and Emmett Anderson with unlawfully hitting Roosevelt James with some blunt instrument on December 20, 1930 (setting out the affidavit). Plaintiff's name appeared as a witness on the back of the affidavit."

The witness admitted the signature of his brother Matthew James to the affidavit of date of December 20, 1930, and that he signed the proof of death stating he (his brother) was supposed to have drowned in the Tennessee river near Seven Mile Island, and that he was "last seen on December 20, 1930, crossing Tennessee River near where he (his body) was found."

The record further shows by the "Statement of a Friend," Lucien McKay, that the date of death was December 20 (1930), and that the date of his burial was February 3, 1931. The "Statement of the Minister" identified the body as that of Roosevelt James and that the interment was February 3, 1931. The manager of defendant's company fixed the date when deceased last attended his usual work, "Last seen was December 20, 1930," and in answer to other questions stated that the premium was paid December 24, 1931 (meaning 1930); that notice of his death was February 13, 1931; that his informant was Jesse James, the plaintiff and beneficiary; and that he reported from his investigation and from the statements of the claimant and others that he did not believe the claim was valid. Witness testified that he gave the proofs signed by McKay and Crump to Mr. Hester; that Simpson told him on December 23d that Roosevelt did not go back to work "this morning" and he was "looking for him"; that he did not know where he was until "he was found"; that he obtained the information for the proof of loss form where he worked, and did not tell McKay and Hubbard that his brother died on the 20th day of December.

The witness Crump testified that "The report was circulated among the people that he died or was last seen on the 20th"; and the statement of Dr. Hubbard, offered in evidence, contained the following: "3. Date of Death? Month Dec. (meaning December), Day 20, Year 1930." In connection with this Dr. Hubbard testified that "The statement that I wrote in there was taken from the statement of parties. I procured information about when he was last seen. * * * Roosevelt James was last seen by Raymond Crittenden and Henry Crittenden, both colored, and Emmett Anderson, white, on the Saturday before Christmas, about five P. M. at the upper end of No Man's Tow Head in the south side of Tennessee River. At that time he was coming north. He was found February 3, at ten A. M. by Lucien McKay and Jesse James, the latter a brother. They were hunting for Roosevelt."

The witness Lucien McKay testified that he

was the one who found the body; that he signed the proof of death, stating therein the information ("he got") that Roosevelt was last seen on December 20th, "from some of the men that live down there."

Matthew Key testified that he last saw deceased on December 20th, which was Saturday night before Christmas, and he was about five or six miles from Seven Mile Island.

Witness Vozier testified that he saw deceased "pass the house Christmas Eve or Christmas Day * * * about six o'clock in the morning"; that he was "pretty positive," but "could not say positively whether it was Christmas Eve or Christmas Day"; that he imagined it would be Christmas. Day; that that was his best judgment.

Such were the reasonable tendencies of the plaintiff's evidence.

The defendant's witness Price gave evidence that deceased was in his store Friday night and said he was "making some liquor" and "as soon as he got it out he would be back in"; that on Saturday night before Christmas the report was circulated that Roosevelt James "had been drowned," and Jesse James and Mr. Blalock were in a car going down to the river on Tuesday thereafter.

Blalock said the deceased worked for him, and that on Tuesday he talked with plaintiff about the report of Roosevelt's death, and that they went to the river where people were dragging for Roosevelt and Jesse got out in a boat and helped drag.

Lawson said he heard about the drowning on *Monday;* that he saw plaintiff "out in a boat on Wednesday, the day before Christmas * * * dragging the river for Roosevelt"; that he identified "Jesse James as the man who was in the boat on December 24th."

Reynolds testified that he heard of the drowning on "Sunday morning, the 21st of December"; that he "was on the Island that Sunday morning" and "saw people dragging for his body there on Tuesday, the 23rd"; that plaintiff was there on the 23d of December.

The defendant's witness Charles Anderson testified that deceased worked for him part of the time; that he "saw him on Seven Mile Island on Saturday, December 20th"; was to meet him "that night," which he (deceased) failed to do; that he saw plaintiff Tuesday morning looking to find where his brother was drowned, and saw him on

Wednesday when they were dragging for the body.

Robert Anderson saw plaintiff on *Tuesday before Christmas* at the river where men were dragging for the body; did not see deceased after Saturday, December 20th.

The witness Emmett Anderson said Roosevelt was on the river on December 20th, about 4 o'clock in the afternoon, going on the north side of the island; witness searched for him that night, went to the tow head where he had a boat tied up; saw tracks leading into the water; that deceased was also seen in the boat by the Crittendens; that the water was released from the dam on the evening of December 20th, and the river rose something like two feet.

Defendant's agent Hester testified that he took the application and Roosevelt paid the medical fee; that Jesse (his brother) came to the office on the evening of December 24th, paid the premium and received the policy about 4 o'clock; that plaintiff did not tell witness he had heard that the insured was drowned, or that he had been to the river looking for the deceased.

■ Appropriate assignments of error challenge the action of the court in sustaining demurrer to plea 17 as answer to the several counts of the complaint. It is established that there can be no binding delivery of a policy after the death of the assured (32 C. J. p. 1127; 14 R. C. L. 897, § 75); that the delivery of an insurance policy may be actual or constructive (Home Ins. Co. v. Adler, 71 Ala. 516, 526; Phœnix Assurance Co. of London v. McAuthor, 116 Ala. 659, 22 So. 903, 67 Am. St. Rep. 154; Metropolitan Life Ins. Co. v. James, 225 Ala. 561, 144 So. 33), dependent upon the intention of the parties, manifested by acts or words (Farmers' Mut. Ins. Ass'n of Alabama v. Stewart, 192 Ala. 23, 68 So. 254; Phœnix Assurance Co. of London v. McAuthor, supra, 116 Ala. 659, 22 So. 903, 67 Am. St. Rep. 154; New York Life Ins. Co. v. McJunkin, 227 Ala. 228, 149 So. 663, 667; Triple Link Mutual Indemnity Ass'n v. Williams, 121 Ala. 138, 26 So. 19, 77 Am. St. Rep. 34; American Nat. Ins. Co. v. Few, 224 Ala. 576, 141 So. 234; Mut. Life Ins. Co. v. Otto, 153 Md. 179, 138 A. 16, 53 A. L. R. 487).

■ Plea 17 set up facts that are material to the consummation of the contract by way of an agency or supposed agency, dependent on whether the assured was alive on the date of the delivery of the policy. If such was

**390**

not the fact, the contract was never consummated—had never existed. Ivie v. International Life Ins. Co., 217 Ala. 559, 117 So. 176; Metropolitan Life Ins. Co. v. James, supra; American Nat. Ins. Co. v. Few, supra; Corry v. Sylvia Y Cia, 192 Ala. 550, 68 So. 891, Ann. Cas. 1917E, 1052; 12 R. C. L. p. 307, §§ 68–70.

On the former appeal the observation is made that, if the insured died on December 20th, or prior to December 24th (1930), when the premium was paid by an alleged agent, the beneficiary, and the policy delivered to that beneficiary by the local agent on such representation, "there was no contract"; that in the absence of such agency "The whole matter remained in negotiation merely"; that the "agency of the beneficiary to pay the premium and receive the delivery (of the policy) was revoked by death"; and that, if the assured is dead, "there is no one to make a warranty, no one to contract, no life to insure; hence no contract ever comes into existence."

 Plea 17 rests upon the fact that, under the circumstances disclosed of the manual delivery of the policy by defendant's agent to the beneficiary, the duty rested upon such beneficiary plaintiff to have truly disclosed the material facts necessary to the agency and consummation of the contract as set up by that plea. Cooper v. Rowe, 208 Ala. 494, 94 So. 725. There may be a vitiating and fraudulent silence. Ivy v. Hood, 202 Ala. 121, 79 So. 587; Gulf Electric Co. v. Fried, 218 Ala. 684, 119 So. 685. The burden was upon the beneficiary to prove that the assured died within the life of the policy. Sovereign Camp, W. O. W., v. Ward, 196 Ala. 327, 71 So. 404; American Nat. Ins. Co. v. Moss, 215 Ala. 542, 112 So. 110; Supreme Commandery of the Knights of Golden Rule v. Ainsworth, 71 Ala. 436, 46 Am. Rep. 332; Weil v. Travelers' Ins. Co., 16 Ala. App. 641, 80 So. 348. And this he may do by introduction of the policy and the proof of loss within the time stated and make a prima facie case, that he could not do had he not so procured the delivery of the policy on December 24, 1930. That is to say, the plea discloses that, under the particular circumstances of the case, a material fact within the knowledge of the beneficiary and which it was his duty to disclose before paying the premium and procuring the policy was suppressed. This was within the purview of the fraud declared in section 8050 of the Code of 1928 and 1923. It is there declared that "Suppression of a fact

*material to be known, and which the party is under an obligation to communicate,* constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties, or from the particular circumstances of the case." (Italics supplied.) Metropolitan Life Ins. Co. v. Goodman, 196 Ala. 304, 71 So. 409; Williams v. Bedenbaugh, 215 Ala. 200, 110 So. 286; Bankers' Mortg. Bond Co. v. Rosenthal, 226 Ala. 135, 145 So. 456; Gulf Electric Co. v. Fried, 218 Ala. 684, 119 So. 685; Coleman v. Night Commander Lighting Co., 218 Ala. 197, 118 So. 377.

 The payment of the premiums was a condition precedent to delivery to assured (New York Life Ins. Co. v. McJunkin, 227 Ala. 228, 149 So. 663), and the demand for delivery after payment of premiums was the equivalent of an affirmative assertion of the fact of the assured being alive and of the existence of the agency of beneficiary to act for assured in consummation of the contract of insurance. Had there been a true disclosure of the facts known to that agent, according to plea 17, there would have been no voluntary and manual delivery of the policy to that beneficiary and agent. The question of delivery, or the effect thereof, by the defendant to its agent, would have been presented—whether actually delivered or not— had the premiums been paid. Such was not the case at the time of making the application. New York Life Ins. Co. v. McJunkin, 227 Ala. 228, 149 So. 663. The only authority plaintiff had lay in the fact of his agency, and it was his duty to have disclosed the facts affecting that agency under the particular circumstances of the case. Section 8050, Code of 1928; Independent Life Ins. Co. v. Seale, 219 Ala. 197, 121 So. 714; Sovereign Camp, W. O. W., v. Hutchinson, 214 Ala. 540, 108 So. 520. Thus the fact of due delivery of the policy to an agent who paid the premium was material, and was presented and challenged by the facts showing fraud (under the statute, section 8050, Code) and stated in the plea. The use of the words *"due on the policy"* in the complaint carried the burden to the plaintiff of showing that death occurred within the period covered by the policy; that is, that the policy contract existed in this case from December 24, 1930, the date of its delivery. American Nat. Ins. Co. v. Moss, 215 Ala. 542, 112 So. 110. We think that the demurrer to plea 17 was improperly sustained.

 It is held that such contract in evidence is presumed to have been duly ex-

ecuted by the defendant, in the absence of a sworn plea of non est factum. National Life & Accident Ins. Co. v. Winbush, 215 Ala. 349, 110 So. 571. This plea under the statute and the observations of the opinion on first appeal was interposed. The contract in evidence was not completed on the application; nor was it such as was consummated on delivery by the plaintiff to its agent. New York Life Ins. Co. v. McJunkin, 227 Ala. 228, 149 So. 663. It was required of the assured that the payment of the premium be made as required before delivery to the assured. This was not done. The premium being paid by and delivery to the representative or alleged agent was not completed without a due delivery after payment of premium during the life of the insured; hence the pleas of non est factum. Pleas 15 and 16 cast the burden of proof upon plaintiff to show a binding contract of insurance. Metropolitan Life Ins. Co. v. James, 225 Ala. 561, 144 So. 33; Sulzby v. Palmer, 196 Ala. 645, 70 So. 1; Ehl v. J. R. Watkins Medical Co., 216 Ala. 69, 112 So. 426; sections 7663, 9471, Code.

■ The burden was upon plaintiff to prove the material averments of one or more of the counts of his complaint (Kelly v. Hanwick [Ala. Sup.] 153 So. 269)—that assured "died on or about the 3rd day of February, 1931" (count 1), or that he "died on or about the 3rd day of February, 1931, which was during the existence of and while said policy was in force" (counts 2, 3, and 4). We have indicated that by the preponderance of the evidence the assured disappeared on or before December 20, 1930, and his body was found in the river on February 3, 1931. All the testimony shows date of December 20th, with the exception of the testimony of the witness Vozier. He testified that he saw "him pass * * * Christmas Eve or Christmas Day * * * about six o'clock" (before sunrise); that he "could not say positively whether it was Christmas Eve or Christmas Day"; that he imagined "it would be Christmas Day. That is (his) my best judgment"; that "he heard Roosevelt was missing the same day" he saw him. This witness was summoned, but did not testify on the first trial.

■ The cross-examination of the witness Vozier developed that the day on which Vozier saw Roosevelt passing his house going toward the river "at 6:20 in the morning on the 24th or 25th of December" and "about a quarter of a mile" from Albert Price's store, where Vozier went before breakfast, and "told Mr. Price at Mr. Price's store at 6:20"

that he had seen "Roosevelt walking down the road." He further detailed the circumstances of 'visibility which made it very doubtful of his identification *at that time.* However, the statement of Mr. Price as a witness, that he was "not positive whether it was Sunday morning or Monday morning that Mr. Rozier (Vozier) came to my (his) store following the Saturday night when Roosevelt James was rumored to be drowned"; that he told Vozier "the rumor"; knew "it was not Christmas Day that he (Vozier) came," and "thought it was on Tuesday"— did not render more definite the time when Vozier said he saw Roosevelt passing. The power of Vozier to have seen Roosevelt under the physical conditions detailed is rendered more difficult by Price's statement that there was no street light in front of where Mr. Vozier lives, and the further fact that sunrise of that day at the place in question was 7:22 a. m., and the fact that the road was about 35 feet from the house and witness was about thirteen or fourteen feet from the window within his house, and the witness failed to state whether or not he was dressing by a light. If he had a light as he sat by the stove dressing, he was looking to the road through the twilight of that time. This is by way of the ability of the witness to recognize assured in the road about fifty feet distant one hour before sunrise. Under this scintilla of evidence—that deceased was alive on Christmas Day or the Tuesday thereafter —there was no reversible error in admitting the policy in evidence against the objection of the defendant and under the burden of the pleas of non est factum. Ehl v. J. R. Watkins Medical Co., 216 Ala. 69, 112 So. 426; Standard Cooperage Co. v. Dearman, 204 Ala. 553, 86 So. 537. This testimony is not within the rule of Peters v. Southern Railway Co., 135 Ala. 533, 540, 541, 33 So. 332; Dickson v. Dinsmore, 219 Ala. 353, 122 So. 437; Hines, Director General, etc., v. Cooper, 205 Ala. 70, 88 So. 133; Brown v. Corona Coal Co., 208 Ala. 522, 94 So. 535; Shafer v. Myers, 215 Ala. 678, 112 So. 230; Louisville & Nashville Railroad Company v. Moran, 190 Ala. 108, 122, 66 So. 799.

■ In the oral charge the court said: "In this sort of case the burden is on the plaintiff to reasonably satisfy you of his claim, and he makes out a prima facie case when he introduces the policy in evidence, the policy being duly executed, and proves the insured is dead and proves the policy was delivered to the beneficiary and the premium paid, the quarterly premium, in full."

Apparently, in this there was error under

the evidence. The question of the time of the death of assured was a material issue of fact, as we have indicated. The beneficiary had no right to pay the premium and receive the policy in the capacity of an agent in the absence of facts showing the agency. He had no such right to procure delivery merely because he was the beneficiary.

The court was not in error, under this evidence, in instructing as follows:

"Now, as a general proposition of law, gentlemen, when a man makes an application for an insurance policy and that application is sent to the home office and the home office executes a policy of insurance and puts it in the mail and mails it back to the insured,—as a general proposition of law that constitutes delivery of the policy, unless there is some specification in the contract to the contrary.

"However, the main point in this case, as you have perhaps noticed from the testimony, is as to whether or not the deceased Roosevelt James was dead at the time of the payment of the quarterly premium and the delivery of the policy to his beneficiary Jesse James, the plaintiff in this case.

"A provision in the application which is made a part of the contract which, as I charged you, is the basis of this suit, is that the policy can not become effective until the full quarterly premium had been paid during the life time of the insured. Now the defendant says by these special pleas that at the time this quarterly premium was paid the insured was dead and therefore the policy was not effective at the time the premium was paid and never did go into effect, and they didn't have knowledge of the fact that the insured was dead at that time,—that is at the time they accepted through their agent the payment of the quarterly premium."

When taken with the instructions immediately preceding and succeeding, this observation of the court to which exception was reserved was made without error. It was merely a statement that would have authorized the request for, and the giving of, an explanatory charge, since the application and policy show that the *intent to deliver* the policy was dependent upon full payment of the first premium while the insured was alive and in good health.

There was no error in instructing the jury in the oral charge that proofs of death are subject to rebuttal or explanation to the reasonable satisfaction of the jury, when the whole charge as given on that subject is considered. Commonwealth Life Ins. Co. v. Harmon, ante, p. 377, 153 So. 755.

The allegation in the several counts of the complaint, that the amount claimed is due on the policy, implies (by that averment) that the policy was in force at the time of the death of the assured. American Nat. Ins. Co. v. Moss, 215 Ala. 542, 112 So. 110; Sovereign Camp, W. O. W., v. Hubbard, 217 Ala. 431, 116 So. 163.

In the absence of contrary stipulations (2 Cooley's Briefs [2d Ed.] 1390; New York Life Ins. Co. v. McJunkin, 227 Ala. 228, 149 So. 663), the risk commences with the completion of the contract—here, by the payment of the first premium and a due delivery while assured was in life (National Life & Accident Ins. Co. v. Bridgeforth, 220 Ala. 314, 316, 124 So. 886). The burden of showing this rested first upon the plaintiff, to show the assured died within the life of the policy, which was not delivered before the premium was paid after 4 o'clock p. m. of December 24, 1930. The death was not conclusively proven until the body was found on February 3, 1931; the date of his disappearance and the time he was last seen on the river, and the unconfirmed rumor of his death were of the date of December 20, 1930. This was before the premium was paid and the policy delivered or handed to plaintiff on his demand. We are of opinion that, under the evidence indicated, and the appropriate plea, charges 2, 3, and 4, given at plaintiff's request, while stating correctly a general proposition, were erroneously given. And defendant's requested charges which were refused (National Life & Accident Ins. Co. v. Bridgeforth, 220 Ala. 314, 124 So. 886; American Nat. Ins. Co. v. Moss, 215 Ala. 542, 112 So. 110) were charge 11, which asserted a correct proposition of law, and charge 21, which was covered by given charges.

The affirmative instruction requested by defendant should have been refused. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135. In the decision on the first appeal, the court observed that "the date of one (meaning disappearance) is presumably the date of the other (meaning that of his death)." Metropolitan Life Ins. Co. v. James, 225 Ala. 561, 564, 144 So. 33, 35. In that trial the evidence of the witness Vozier was lacking, and the statement of the witness Price as to the time Vozier came to his store and the rumor of death by drowning discussed by them was not present or indicated by the record on the first appeal. It follows that the case was properly submitted to the jury under the scintilla evidence rule that obtains.

In view of another trial, we consider plaintiff's exception to the ruling of the

court presented on introduction of the evidence of Vozier. On cross-examination, in the absence of the jury, it was shown to the court that witness had been an inmate of an insane asylum. Defendant sought to acquaint the jury with the facts of this witness' incumbency in such institution, as it may tend to affect his credibility, or test the reasonableness of his best judgment of the matters of which he had testified. The witness was present for the jury to see and hear, and there was no error in the ruling of the trial court in this respect. It was not within the rule of the cases. Worthington & Co. v. Mencer, 96 Ala. 310, 11 So. 72, 17 L. R. A. 407; Walker v. State, 97 Ala. 85, 12 So. 83; McKinstry v. City of Tuscaloosa, 172 Ala. 344, 54 So. 629; 26 A. L. R. 1493; Allen v. State, 60 Ala. 19. The question of the competency of a witness is for the court to decide, and the credit to be accorded the testimony he gives is for the jury. Cannady v. Lynch, 27 Minn. 435, 8 N. W. 164; 1 Greenleaf on Evidence, § 365; 1 Wharton on Evidence, § 403.

In view of a reversal on other grounds, we do not discuss the motion for a new trial under the evidence and our recent decisions. Metropolitan Life Ins. Co. v. Usher, 226 Ala. 314, 146 So. 809; Sovereign Camp, W. O. W., v. Gunn, 224 Ala. 444, 140 So. 410; Commonwealth Life Ins. Co. v. Harmon, supra; Mutual Life Ins. of New York v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A. L. R. 649; Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.